UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SINOHUB SECURITIES LITIGATION.<br><br>This Document Relates To:<br>All Actions | Master File No:<br>No. 1:12-cv-08478-WHP |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO AUTHORIZE SERVICE OF UNSERVED INDIVIDUALS LOCATED ABROAD PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)**

Lead Plaintiff Ellsworth Investments Limited ("Ellsworth" or "Plaintiff") respectfully submits this reply memorandum of law in further support of its motion for an order permitting it to serve the individual defendants not yet served in this case through Defendant SinoHub Inc.'s counsel as permitted by Rule 4(f)(3) of the Federal Rules of Civil Procedure and in response to Defendants' opposition thereto.

**INTRODUCTION**

Plaintiff filed this action on November 19, 2012 against SinoHub, Inc. ("SinoHub" or the "Company"), its Chairman of the Board, Chief Executive Officer, Secretary and Treasurer Henry Cochran ("Cochran"), its Chief Financial Officer De Hui Li ("Li"), its President Lei Xia ("Xia"), its chairman of the Audit Committee Daniel Chi Keung Lui ("Lui"), and the auditing firm Baker Tilly Hong Kong ("Baker Tilly")(collectively, "Defendants"). Three of the Defendants—Cochran, Xia, and Lui (the "Unserved Individual Defendants")—each of whom are current officers or directors of the Company or its subsidiaries, have refused to allow defense counsel for

1

the Company to accept service on their behalf.[1]  On April 12, 2012, therefore, Plaintiff moved this Court to permit that the Unserved Individual Defendants be served through SinoHub's defense counsel, Seyfarth Shaw LLP, on the reasonable premise that defense counsel will transmit the relevant documents to the Unserved Individual Defendants.  On April 26, 2013, SinoHub opposed Plaintiff's Motion ("Def. Br."), arguing that Plaintiff somehow had not met the "standard" for approval of alternative service under Rule 4(f)(3).  Defendant's argument is fatally flawed, however, because Plaintiff is *not* required to attempt service through the Hague Convention prior to seeking alternative service.  Furthermore, Plaintiff at no point suggests that the Hague Convention is inapplicable, but that alternative service is not prohibited by international agreement.  Indeed, there is no dispute that service via the Hague Convention will take a number of additional months if Plaintiff is able to obtain these individuals' government identification numbers and last known addresses.  Therefore, as set forth herein and in Plaintiff's moving papers, Plaintiff respectfully requests that its motion be granted in its entirety.

## ARGUMENT

### 1. The Law Does Not Require Prior Hague Convention Attempts

Fundamentally, SinoHub has misrepresented the requirements under Rule 4(f)(3) by suggesting that Plaintiff must attempt service via the Hague Convention prior to seeking alternative service.  Def.'s Br. at 2-5, ECF No. 34.  This, in fact, is not the law.  Instead, the guiding principle to determine if alternative service is appropriate in virtually every court is

---

[1] Despite Defendant's claim to the contrary (Def. Br., p.1, n.1, ECF No. 35), Plaintiff has been exceedingly clear that this motion does *not* pertain to Defendant De Hai Li as counsel for SinoHub has represented to Plaintiff's counsel that it is not in communication with and does not know the whereabouts of De Hai Li.  *See,* Declaration of Joseph P. Guglielmo ("Guglielmo Decl."), filed herewith, at ¶1.  If Plaintiff's counsel becomes aware of facts which show that counsel for SinoHub is or has recently communicated with or represents Li, Plaintiff will amend its request to serve Li via Seyfarth Shaw.

2

derived from *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002) in which the Ninth Circuit noted:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. **No other limitations are evident from the text.**

Emphasis added.

Thus, service under Rule 4(f)(3) is neither a "'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Ehrenfeld v. Mahfouz,* No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005)(quoting *Rio Props.,* 284 F.3d at 1015)(authorizing service on foreign defendant's United States counsel where counsel was "in communication with Defendant in relation to the pending legal proceedings in the United States… and will know how to locate Defendant"); *see also, United States v. Machat,* No. 08 Civ. 7936, 2009 WL 3029303, at *3 (S.D.N.Y. Sept. 21, 2009). Therefore, "***[a] plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3).***" *SEC v. Anticevic,* No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (emphasis added); Wright & Miller, 4B *Federal Practice & Procedure: Civil 3d Section 1134,* at 333 (2002)("The only proscription on the district court's discretion is that the method not be prohibited by international agreement"). In *In re China Valves Tech. Sec. Litig.,* 11 Civ. 0796 (LAK), the court rejected the very argument that Defendants make here, namely, that service through the Hague Convention is mandatory or required.

In relying on *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 115-16 (S.D.N.Y. 2010), SinoHub notes that **some** courts have held that **even though attempts at service under the Hague Convention are not required**, a Court may ask that a movant meet

3

certain threshold requirements. However, SinoHub fails to acknowledge that this is something a court "may" do in its discretion, but is not legally required. Numerous cases since *Madu* have clarified this fact. For example, in *FTC v. PCCARE247, Inc.,* No. 12 Civ. 7189(PAE), 2013 WL 841037, at *3 (S.D.N.Y. Mar. 7, 2013), this Court succinctly held that "[a] plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3). . ." (internal citations omitted). The decision then goes on to note: "***but a district court may nonetheless require parties to show that they have reasonably attempted to effectuate service on the defendants and that the circumstance are such that the district court's intervention is necessary.***" *Id., citing Anticevic,* 2009 WL 361739, at *3 (emphasis added). In fact, the decision cites to *Madu* for the proposition that "district courts *may* impose a threshold requirement" (emphasis added). *Id.* Therefore, the majority of courts hold that no attempts at Hague Convention service are required prior to seeking alternative service, and cases since *Madu* have clarified that a court may in some circumstances ask a plaintiff to show reasonable attempts.

The case of *In re GLG Life Tech. Corp. Sec. Litig.,* 287 F.R.D. 262 (KBF)(S.D.N.Y. 2012) is exactly on point. There, the plaintiff served the defendant company but not an individual defendant/company employee who resided in China. The plaintiff's counsel sought the individual defendant's address from the company's counsel who did not timely provide it. Therefore, the plaintiff moved under Rule 4(f)(3) for alternative service seeking to serve the company's counsel or its registered agent in the United States. Defendants there likewise argued that the plaintiff had to go through the Hague Convention first. In its decision, the court recognized the fact that some courts may require a showing that the plaintiff has reasonably

attempted to effectuate service on the defendant. *Id.* at 265-66. However, the court rejected the defendant's argument and argued that:

> This Court concurs that there will undoubtedly be many instances where significant efforts to make service under the Hague Convention should be required by a court before alternative service is ordered. But nothing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3).

*Id.* at 266. Therefore, the court concluded that "[i]n the present case, it is difficult to see how principles of comity would be upset if alternative service is ordered on a defendant who is not a citizen of China and has voluntarily and closely associated himself with a non-Chinese entity that is already a served co-defendant." *Id.* The court further noted that it was far from a whimsical motion especially when it was partially caused by defense counsel's refusal to provide the address of the individual defendant. *Id.* at 267. Ultimately, therefore, the court stated that "[g]iven the certainty that service on GLG's attorneys and/or GLG will result in notice to Zhang, and given that service via the Hague Convention would be a pointless and lengthy exercise, an order of alternative service is justified." *Id*.

      The case at hand is directly on point. Here, too, counsel for SinoHub has represented that it has been in communication with these individuals and that they have refused to authorize counsel to accept service. Plaintiff's counsel has repeatedly asked counsel for the addresses and government identification numbers of the Unserved Individual Defendants. Guglielmo Decl., ¶4. Defense Counsel has hitherto failed to provide that information. *Id.* While Plaintiff has enlisted the (costly) help of an outside investigator to obtain the identification numbers and addresses, it

5

has been unable to date to receive all required information.[2] *Id.,* ¶5.  Plaintiff therefore brought this motion.  Here, too, it is difficult to see how comity would be upset when the Unserved Individual Defendants chose to incorporate SinoHub in Delaware, have a registered agent in Delaware, and purposefully availed themselves of the U.S. securities markets and the securities laws of this country by actively trading the Company's common stock on the New York Stock Exchange and by filing the Company's filings with the Securities and Exchange Commission.[3]  Courts have emphasized that "[w]e should not lose sight of what service of process is about, it is about giving a party notice of the pendency of an action and the opportunity to respond." *Nanya Tech. Corp. v. Fujitsu Ltd.,* No. Civ 06-00025, 2007 WL 269087, at *5 (D. Guam Jan. 25, 2007).  Here, the Unserved Individual Defendants clearly know about the action as they have been communicating with counsel for SinoHub.  Moreover, they clearly have the opportunity to respond to the claims along with SinoHub whose counsel has already appeared and is presently prepared to defend the Company and is opposing this motion.  Thus, there can likewise be no doubt that service on SinoHub's counsel will not prejudice these individuals and will result in notice to the Unserved Individual Defendants as Seyfarth Shaw is in communication with the three men.[4]

---

[2] Should the Court deny Plaintiff's Motion, Plaintiff requests that the Court immediately compel counsel for SinoHub to produce the government identification numbers and last known addresses of all Defendants.

[3] Requiring the use of international conventions to achieve service on foreign defendants makes little sense in a situation where they contracted and "signed on" to have United States laws applied. *See, e.g. Russell Brands, LLC v. GVD Int'l. Trading, SA,* 282 F.R.D. 21 (D. Mass. 2012)(allowing alternative service when underlying contract required litigation take place in Massachusetts).

[4] SinoHub claims that Plaintiff must show that Seyfarth Shaw has represented the Unserved Individual Defendants in prior litigation.  Def. Br., p. 2.  Plaintiff is unable to find, and SinoHub does not cite any, authority requiring this connection.  Instead, Seyfarth Shaw has repeatedly stated that counsel for SinoHub is in direct contact with the Unserved Individual Defendants, thus making it certain that service on Seyfarth Shaw would give ample notice.  Guglielmo Decl., ¶2.  Moreover, Seyfarth has previously represented the Company and these defendants in filings before the Securities and Exchange Commission, including representing the Company and these defendants in issuance and sale of SinoHub stock.  There can therefore be no doubt that the Unserved Individual Defendants are apprised of the pendency of this action and would not be prejudiced by service through an alternative method.  *See Arista Records LLC v. Media Servs. LLC,* No. 06 Civ. 15319 (NRB), 2008 WL 563470, at *2 (S.D.N.Y. Feb. 25,

**2.     Plaintiff Has Made a Good Faith Effort at Service**

Even if this Court were to impose a threshold requirement that Plaintiff show a reasonable attempt at service of the Unserved Individual Defendants, Plaintiff clearly has met such a standard. As made clear in Plaintiff's moving papers, Plaintiff has taken numerous steps to attempt service on the Unserved Individual Defendants, including:

- Attempting personal service on Defendant Cochran at his last known address in Massachusetts and conferring with his daughter; Guglielmo Decl., ¶7;

- Reviewing public documents and online resources to attempt to obtain the addresses of the Unserved Individual Defendants; Guglielmo Decl., ¶6;

- Retaining a personal investigator to obtain the government identification numbers and addresses of the Unserved Individual Defendants; Guglielmo Decl., ¶5;

- Repeatedly requesting the identification numbers and addresses of the Unserved Individual Defendants from Seyfarth Shaw; Guglielmo Decl., ¶4; and

- Commencing service of process via the Hague Convention and having the Complaint translated as required by the Hague Convention. Guglielmo Decl., ¶8.

These steps go above and beyond those taken in analogous cases. *See, e.g. In re GLG,* 287 F.R.D. 262. Therefore, as stated herein and in Plaintiff's moving papers, alternative service is warranted as it is not prohibited by international agreement- the sole requirement mandated by law.

---

2008)("In crafting an alternative method of service, we recognize that [defendant] has actual notice of this action, and thus, as a practical matter, the purpose of the service requirement has already been accomplished").

**3.      Service of SinoHub's Counsel Is Not Prohibited by International Agreement**

Defendant SinoHub utterly contorts Plaintiff's Motion in maintaining that Plaintiff suggests the Hague Convention is not applicable. Def. Br., p. 4. Plaintiff has argued no such thing. Instead, Plaintiff simply notes that service of Seyfarth Shaw does not violate the Hague Convention. Numerous courts have ordered the exact same relief sought here. *Supra*. Indeed, serving foreign defendants through domestic counsel is an alternative method of service that is routinely ordered by federal courts because it does not require use of the Hague Convention as documents are never transmitted abroad by plaintiffs. *See, e.g. In re GLG,* 287 F.R.D. at 267; *RSM Prod. Corp. v. Fridman,* 06 Civ. 11512(DLC), 2007 WL 2295907, at *1-3 (S.D.N.Y. 2007). Plaintiff therefore does not suggest that the Hague Convention would not otherwise apply—it can be used to effectuate service. However, a Court order authorizing Plaintiff to serve the Unserved Individual Defendants through alternative means would enable Plaintiff to avoid the Hague Convention's time-intensive procedures and to continue expeditiously with the case against all Defendants. *In re GLG,* 287 F.R.D. at 266 ("Additionally, the Court is concerned that the length of time required for service under the Hague Convention, approximately six to eight months, may unnecessarily delay this case"); *Richmond Techs., Inc. v. Aumtech Bus. Solutions,* 11-CV-02460-LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011)(authorizing service through Rule 4(f)(3) where service through the Hague Convention would take 6-8 months). Therefore, Plaintiff respectfully requests that this Court grant Plaintiff's Motion.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court authorize substitute service on the Unserved Individual Defendants Henry Cochran, Lei Xia, and Daniel Chi Keung Lui through SinoHub's defense counsel, Seyfarth Shaw LLP.

DATED:  New York, New York
         May 3, 2013

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

<u>/s/ Joseph P. Guglielmo</u>
JOSEPH P. GUGLIELMO (JG-2447)
DONALD BROGGI
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com
       dbroggi@scott-scott.com

-and-

DAVID R. SCOTT (DS-8053)
AMANDA F. LAWRENCE (AL-8804)
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax.: (860) 537-4432
Email: drscott@scott-scott.com
       alawrence@scott-scott.com

*Counsel for Lead Plaintiff*
*Ellsworth Investments Limited*

CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of May, 2013 at New York, New York.

/s/ Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
Scott+Scott, Attorneys at Law, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com