**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SINOHUB<br>SECURITIES LITIGATION<br><br>This Document Relates to: All Actions | No. 1:12-cv-08478-WHP |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF**
**<u>PROPOSED PLAN OF DISTRIBUTION</u>**

**TABLE OF CONTENTS**

# Contents

I.      INTRODUCTION .................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ......................................... 2

    A.    Summary of Plaintiff's Claims .................................................... 2

    B.    Procedural History ...................................................................... 3

III.    THE TERMS OF THE PROPOSED SETTLEMENT ............................. 4

IV.     THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED IN ALL RESPECTS ................................................................. 5

    A.    The Settlement Was Reached After Protracted Arm's-Length Negotiations by Experienced Counsel and Is Procedurally Fair ............................ 6

    B.    Application of the Grinnell Factors Supports the Approval of the Proposed Settlement as Substantively Fair, Reasonable, and Adequate ............... 8

        1.    The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement.......................... 9

        2.    The Reaction of the Settlement Class to Date Strongly Supports Approval of the Proposed Settlement ....................... 10

        3.    The Stage of the Proceedings and the Amount of Discovery Completed.......................................................... 11

        4.    The Risk of Establishing Liability and Damages Strongly Weights in Favor of Approving the Settlement ...................... 11

        5.    The Risk of Maintaining the Class Action Through the Trial Favors Approval of the Settlement ....................................... 13

        6.    The Risk that Any Judgment Against the Company Would Be Uncollectible Is Significant.......................................... 13

        7.    The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All Attendant Risk of Litigation Support Approval of the Settlement .................. 14

V.      THE COURT SHOULD FINALLY APPROVE CERTIFICATION OF THE SETTLEMENT CLASS ......................................................................... 15

    A.    The Class Definition .................................................................. 15

    B.    Legal Standard for Class Certification...................................... 15

    C.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a).......... 16

        1.    The Class Is Sufficiently Numerous ....................................... 16

        2.    Common Question of Law and Fact Exist............................... 17

        3.    Plaintiff's Claims Are Typical of Those of the Class .............. 17

        4.    Adequate Representation Is Satisfied ..................................... 18

    A.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b) .......... 19

        1.    Common Legal and Factual Questions Predominate............... 19

i

|  | 2. | A Class Action Is the Superior Means to Adjudicate the Claims | 20 |

| VI. | NOTICE OF THE SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS | 21 |
| VII. | THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND REASONABLE AND SHOULD BE APPROVED | 23 |
| VIII. | CONCLUSION | 24 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)...........................................15, 19, 20

*Aramburu v. Healthcare Fin. Services, Inc.*,
    No. 02–CV–6535-MDG, 2009 WL 1086938 (E.D.N.Y Apr. 22, 2009) ...............................14

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ. 2207-JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)...................................13

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N. D. Cal.1979) .....................................................................................15

*by Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000)...................................................................................................6

*Central States Se. & Sw. Areas Health & Welfare*
    *Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)...............................................................................................16

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) .................................................................................23

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014).................................................................................13

*China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*,
    91 F. Supp. 2d 1106 (N.D. Ohio 2000)..............................................................................12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...........................................................................................5, 6, 8

*Clark v. Ecolab Inc.*,
    04CIV.4488PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010).........................................6

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).................................................................................................16

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...............................................................................................5, 7

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)...............................................................................................18

*Haddock v. Nationwide Fin. Services, Inc.*,
   262 F.R.D. 97 (D. Conn. 2009)..........................................................................17

*Holden v. Burlington N., Inc.*,
   665 F. Supp. 1398 (D. Minn. 1987)...................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................9, 14, 15

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597 (WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...............12

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................9, 12

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ...................................................................7, 8, 9

*In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013),
   *appeal withdrawn* Dec. 23, 2013, *appeal withdrawn* Jan. 14, 2014) .......................7

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240-CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)....................6

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
   574 F.3d 29 (2d Cir. 2009)...............................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................9, 12

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) .........................................................................7

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969).....................................................................12

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ..........................................................................9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..................21

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ..........................................................................16

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd sub nom.*,
   *In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) ........11, 23

*In re Veeco Instruments Inc. Sec. Litig.*,
   MDL No. 05-1695-CM, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................11

*Levitt v. J.P. Morgan Secs., Inc.*,
   710 F.3d 454 (2d Cir. 2013)....................................................................................................16

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................................14, 23

*Massiah v. MetroPlus Health Plan, Inc.*,
   11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)....................................11

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)........................................................................................16, 18

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).....................................................................................................6

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238(DLC), 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ....................................6

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004) ..............................................................................................15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ....................................................................................10

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
   No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .............................17

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010)....................................................................................................19

*Vargas v. Capital One Financial Advisors*,
   No. 13 Civ. 3262, 2014 WL 960935 (2d Cir. 2014)................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................5, 6, 7, 21

*Yang v. Focus Media Holding Ltd.*,
   No. 11 Civ. 9051-CM, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .....................................10

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure

Rule 23 ...................................................................................................23
Rule 23(a).....................................................................................1, 16, 23
Rule 23(a)(1)...........................................................................................16
Rule 23(a)(2)...........................................................................................17
Rule 23(a)(3)...........................................................................................17
Rule 23(b)...................................................................................15, 16, 19
Rule 23(b)(3)..................................................................................1, 19, 20
Rule 23(a)(4)...........................................................................................18
Rule 23(c)(2)(B)......................................................................................23
Rule 23(e)...........................................................................................1, 5, 21
Rule (e)(1)...............................................................................................21
Rule 23(e)(2)..............................................................................................5

**OTHER AUTHORITY**

MANUAL FOR COMPLEX LITIG. (*Third*) §30.42 (1995)................................................7

Lead Plaintiff[1] Ellsworth Investments Limited ("Lead Plaintiff" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for Final Approval of Class Action Settlement and Approval of Proposed Plan of Distribution. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff seeks the entry of an Order: (i) granting final approval of the Settlement Agreement (the "Settlement") as set forth in the Stipulation and Agreement of Settlement dated June 25, 2015 (the "Stipulation") (ECF No. 126-1); (ii) certifying the Settlement Class for purposes of the Settlement (*see* §V below); and (iii) approving the proposed plan for allocating and distributing the net settlement (the "Plan of Distribution" or "Plan").[2]

## I.    INTRODUCTION

The Settlement resolves a litigation that has been pending for approximately three years against all Defendants.[3] The proposed Settlement is a reasonable compromise between the Parties, and if approved, will result in the dismissal of this Action with prejudice and a release of all claims by Class Members in exchange for $600,000 paid in cash to the proposed Settlement Class. This is an excellent result, particularly when viewed against the fact that SinoHub is defunct and has no U.S. assets. There is a clear and substantial risk that continued litigation

---

[1]    Unless otherwise noted, all capitalized terms are defined in the Stipulation, which, along with its exhibits, is attached to the Declaration of Joseph P. Guglielmo in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (filed on June 26, 2015 at ECF No. 126-1).

[2]    As set forth in its July 22, 2015 Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 129), the Court preliminarily certified the proposed Settlement Class, for purposes of the Settlement, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF No. 129.

[3]    Defendants in this Action are: (i) SinoHub Inc., ("SinoHub" or the "Company") and Individual Defendants, Henry T. Cochran, De Hui Li, Lei Xia, Chi Keung Lui (collectively, "SinoHub Defendants"), and (ii) the Company's outside auditor, Baker Tilly Hong Kong ("Baker Tilly" or "BTHK"). On October 2, 2014, Lead Plaintiff filed a Suggestion of Death regarding Defendant Cochran. ECF No. 88.

would result in no recovery and Lead Plaintiff's inability to collect any judgment should one be rendered in its favor against the foreign Defendants.[4]   The Settlement was obtained after numerous in-person and telephonic negotiations over the course of approximately one year by counsel experienced in complex securities litigation.   Moreover, the Settlement was only reached after the Parties had extensively litigated the Action and had a thorough understanding of the strengths and weaknesses of the claims asserted on behalf of the Settlement Class.

As discussed more fully below, Lead Plaintiff and the Class Counsel firmly believe that the Settlement here is eminently fair, reasonable, adequate, and meets all the relevant criteria for final approval in the Second Circuit.   Accordingly, Plaintiff respectfully submits that the Settlement should be finally approved by the Court.

## II.      FACTUAL AND PROCEDURAL HISTORY

### A.      Summary of Plaintiff's Claims

This securities class action arises from Defendants' alleged false and misleading statements in public filings and press releases concerning the Company's internal controls, its adherence and knowledge of the U.S. Generally Accepted Accounting Principles ("GAAP"), the manner and amount by which revenue was being recognized, and the overall financial health and future prospects of the Company.   The operative Complaint also alleges that the Company's auditor, Baker Tilly, was at least aware of the Company's lack of internal controls, but nevertheless signed off on its flawed financial statements.   Plaintiff asserted claims for violations

---

[4]      The Declaration of Joseph Guglielmo in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Proposed Plan of Distribution and Motion for Attorneys' Fees, Expense Reimbursement, and Service Award ("Guglielmo Decl.) is an integral part of this submission.   Plaintiff respectfully refers the Court to the Guglielmo Declaration for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation, the settlement negotiations, Plaintiff's Counsel's experience, and the numerous risks and uncertainties presented in this Action.

of §10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5 enacted thereunder on behalf of the proposed Class.

**B.**   **Procedural History**

The above-captioned class action was filed on November 20, 2012 in the United States District Court for the Southern District of New York (the "Court") as a securities class action. On March 4, 2013, the Court appointed Ellsworth Investments Limited as Lead Plaintiff and Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") as Lead Counsel.  ECF No. 24.  The operative complaint in the Action is the First Amended Class Action Complaint (the "Complaint"), filed in this Court on September 16, 2013.  ECF No. 44.  The putative Class consists of all persons who purchased common stock of the Company within the Class Period, which is May 17, 2010 through August 21, 2012.  Following protracted service attempts, in July 2014, Plaintiff perfected service on SinoHub, Defendant De Hui Li, and BTHK, all of whom moved to dismiss the Complaint.  *See* ECF Nos. 65, 68, 90.  Plaintiff responded to all three Motions to Dismiss on December 10, 2014.  *See* ECF No. 96.

In the fall of 2014, the Parties began to discuss possible mediation of the action. Guglielmo Decl., ¶19.  Defendants thereafter provided Lead Plaintiff with insurance policy documents and information on remaining levels of the policies.  *Id.*  Thereafter, the Parties held an in-person meeting to discuss a resolution of the action on October 9, 2014.  *Id.,* ¶20. Although the parties were unable to reach a resolution, the Parties exchanged, considered, and rejected a number of settlement proposals.  *Id.*  The Parties held another in-person mediation on November 18, 2014.  *Id.,* ¶21.  The Parties continued to exchange settlement proposals.  Finally, during the week of December 15, 2014, the Parties reached an agreement in principle and, on January 21, 2015, the Parties executed the initial version of the Stipulation.  *Id.*, ¶22.  Thereafter,

a dispute arose among Lead Counsel and counsel for another plaintiff in this consolidated Action who had subsequently filed a shareholder derivative case in Delaware (the "Li Derivative Action") as to whether the Li Derivative Action was ncluded in the Settlement.   Guglielmo Decl., ¶23.   On June 3, 2015, this Court denied a motion to enforce this disputed agreement between Lead Plaintiff and counsel in the Li Derivative Action.   ECF No. 122.   Recognizing the significant risk of continued litigation, the Parties nevertheless agreed to proceed with the Settlement after making certain modifications.   Guglielmo Decl., ¶24.   Thereafter, on June 26, 2015, Lead Plaintiff filed the current Stipulation with its Motion for Preliminary Approval of Class Action Settlement.   ECF No. 124.   On July 22, 2015, this Court granted preliminary approval of the class action Settlement.   ECF No. 129.   Guglielmo Decl., ¶26.

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

The Stipulation defines the Class as "all persons or entities that purchased or otherwise acquired SinoHub's common stock" between May 17, 2010 and August 21, 2012 (the "Class Period").   Excluded from the Class are Defendants, officers, and directors of the Company, as well as their families of the Defendants, those holding 5% or more of SinoHub's outstanding shares, and any member of the class who has validly and timely requested exclusion from the Class.   *See* Stipulation §§1.4 and 1.6.

The SinoHub Defendants and BTHK will contribute to the Settlement Fund equally, each paying $300,000.   *Id.*, §1.27.   Pursuant to the Preliminary Approval Order, the Defendants have already deposited $100,000 of the Settlement Amount into an escrow account to fund the cost of issuing notice.   *Id.*, §2.1.   On or before five business days after the Court's order granting final approval of the Settlement, Defendants will cause the balance of the Settlement Amount to be deposited into the escrow account.   *Id.*   The total amount of $600,000, less attorneys' fees and

any expenses awarded by the Court, including notice and administration expenses, and any taxes payable from the Settlement Fund will be distributed to Authorized Claimants (*i.e.*, Class Members who file timely and valid Proof of Claim and Release forms) in accordance with the Plan of Distribution described in detail in Section VII below. *Id.*, §§5.1-5.13.

The proposed Settlement provides for a Plan of Distribution, which is based on the Plaintiff's theories of liability, causation, and damages. *See* Section VIII of the Notice and §1.2 of the Stipulation. The proposed Plan seeks to treat all potential claimants in a fair and equitable fashion. Accordingly, each Authorized Claimant will be entitled to the *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's Recognized Claim. Further, the *pro rata* share is based on each Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants. As such, the Plan is designed to equitably distribute the settlement proceeds to those Class Members who have suffered an economic loss as result of the Defendants' alleged actions.

## IV.   THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED IN ALL RESPECTS

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a compromise of class clams. *See* Fed. R. Civ. P. 23(e). A class action settlement should be approved if the Court finds that it is procedurally and substantively "fair, reasonable, and adequate." Fed. R. Civ. P 23(e)(2). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). The analytical framework for evaluating the substantive fairness of a class action settlement, has been set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974),

*abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000) (the "*Grinnell* factors").

In determining the fairness of a proposed class action settlement, courts should be mindful of the "strong judicial policy favoring settlements," particularly in the class action context. *Wal-Mart Stores*, 396 F.3d at 116.[5]   Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240-CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  Because "'[t]he very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or rehearsal of the trial'." *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972).

### A.     The Settlement Was Reached After Protracted Arm's-Length Negotiations by Experienced Counsel and Is Procedurally Fair

In evaluating a class action settlement, the Court should keep in mind the unique ability of counsel to assess the potential risks and benefits of continued litigation. *Clark v. Ecolab Inc.*, 04CIV.4488PAC, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010).   Therefore, a presumption of fairness, adequacy, and reasonableness may attach to a class settlement where, as here, it is a product of "arms-length negotiations between experienced, capable counsel after

---

[5]      *See also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238(DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

meaningful discovery." *Wal-Mart*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIG. (*Third*) §30.42 (1995)). "This presumption arises because if the negotiation process is fair "'the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides.'" *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381 (S.D.N.Y. 2013), *appeal withdrawn* Dec. 23, 2013, *appeal withdrawn* Jan. 14, 2014).

The negotiations here bear each of those hallmarks. First, Lead Counsel who negotiated the Settlement have considerable experience prosecuting complex class action litigation. Guglielmo Decl., ¶69. After nearly three years of litigation, including an extensive investigation and significant motion practice, Lead Counsel were fully informed of the strengths and weakness of Plaintiff's claims. *Id.,* ¶32; s*ee D'Amato*, 236 F.3d at 85 (presumption of fairness applies where "the settlement resulted from 'arm's-length negotiations and . . . plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interest'"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Second, the procedural history of the case evidences that the Parties negotiated at arm's length. The Parties first began to discuss settlement in the fall of 2014. Guglielmo Decl, ¶19. Thereafter, the Parties continued to regularly meet in person and telephonically to discuss the possibility of achieving a resolution of all claims. *Id.*, ¶¶20-21. At these meetings, numerous settlement proposals were exchanged, considered, and rejected. *Id.*, ¶21. Ultimately, during the week of December 15, 2014, the Parties reached an agreement in principle and, on January 21, 2015, the Parties executed the initial Stipulation. *Id.*, ¶22. Following motion practice in this

Court, on June 3, 2015, this Court denied Lead Plaintiff's motion to enforce a settlement between Lead Plaintiff and plaintiff's counsel in the Li Derivative Action. *Id.*, ¶23. Recognizing the significant risk of continued litigation, the Parties nevertheless agreed to proceed with the Settlement after making certain modifications to its content. *Id.*, ¶24. On June 26, 2015, the Parties submitted to the Court a Stipulation of Settlement and Motion for Preliminary Approval. On July 22, 2015, this Court granted preliminary approval of the class action Settlement (ECF No. 129). *Id.*, ¶26. Clearly, the negotiations here were hard-fought by both sides and required the Parties' substantial time and effort to conclude. Therefore, a presumption of fairness applies here.

### B.   Application of the Grinnell Factors Supports the Approval of the Proposed Settlement as Substantively Fair, Reasonable, and Adequate

The next step in the final approval process is the Court's determination whether the substantive terms of the settlement support or rebut the presumption of fairness arising from the arm's-length negotiations. *Citigroup Inc.*, 296 F.R.D. at 155. The Court's analysis in this regard is governed by consideration of the factors set forth in *Grinnell*. There, the Second Circuit identified the following nine factors to be considered:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. Although the Court should consider each of the *Grinnell* factors carefully, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.* at 462. In finding that a settlement is fair, not every factor must weigh in favor of settlement, "'rather the court should consider the totality of these

factors in light of the particular circumstances.'" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

### 1.    The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

Courts have consistently recognized the complexity, expense, and likely duration of litigation as critical factors in evaluating the reasonableness of a settlement []." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014).  "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013).  This is especially so in securities class actions.  *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This Action was unquestionably complex, as it involved complicated securities fraud claims against international corporate, individual defendants, and an auditor, which would ultimately necessitate the retention of multiple experts on the issues of loss causation and damages.  Guglielmo Decl., ¶27.  Absent the Settlement, the Parties would have had to argue the motions to dismiss, engage in extensive discovery, and brief, and argue class certification. Discovery in this matter would be extremely difficult, costly, and time-consuming, given that it would need to be obtained from China.  *Id.*  There is no doubt that should such a process occur, the remaining proceeds from the wasting Directors and Officers insurance policy would have been depleted by the time the case proceeded to trial.  *Id.*, ¶28.

In contrast, this Settlement serves to preserve the remaining financial resources that exist under the Company's wasting policy and eliminates the risk of no recovery at all.  It is therefore in the best interest of the Class.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

### 2.   The Reaction of the Settlement Class to Date Strongly Supports Approval of the Proposed Settlement

The class's reaction to a proposed settlement is a significant factor in assessing its fairness and adequacy.  *See Yang v. Focus Media Holding Ltd.,* No. 11 Civ. 9051-CM, 2014 WL 4401280, at *6 (S.D.N.Y. Sept. 4, 2014) ("A small number of objections may be viewed as indicative of the adequacy of the settlement.").  The reaction of the Class to this Settlement has been entirely positive.  Guglielmo Decl. ¶¶29-31.

On August 11, 2015, the Class was notified of the Settlement by First-Class U.S. Mail, publication, and the Internet.  *See* KCC Aff., ¶3.  Post Card Notices of the Settlement were mailed directly to over 522 potential Class Members and a Summary Notice was published in the *Investor's Business Daily* and *PR Newswire* on August 11, 2015.  *Id.*, ¶¶2, 7.  The average readership of the *Investor's Daily* on Tuesdays is over 300,000 and the press release was distributed to more than 6,500 press outlets throughout the U.S.  *Id.*, ¶7.  Moreover, a dedicated website, www.SinoHubSettlement.com, was created and all relevant documents and dates were posted thereon.  *Id.*, ¶9.

Pursuant to the Preliminary Approval Order and as set forth in the notices, the deadline to request exclusion or to object to any aspect of the Settlement is October 29, 2015.  To date, there

have been no objections and no requests for exclusion have been received.[6]  *Id*., ¶10.   Although

the deadline to object to the Settlement has not yet passed, "[t]he strong favorable reaction of the

class [to date] is overwhelming evidence that the Settlement is fair, reasonable and adequate."  *In*

*re Veeco Instruments Inc. Sec. Litig*., MDL No. 05-1695-CM, 2007 WL 4115809, at *7

(S.D.N.Y. Nov. 7, 2007).   Thus, the reaction of the Class supports final approval.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

The pertinent question here is "whether counsel had an adequate appreciation of the

merits of the case before negotiating."  *Massiah v. MetroPlus Health Plan, Inc*., 11-CV-05669

BMC, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012).   The Settlement here was reached

after nearly three years of active litigation and motion practice.  Guglielmo Decl., ¶32.   Although

no formal discovery was taken, as detailed in Plaintiff's Motion for Preliminary Approval, Lead

Counsel conducted an extensive investigation into the factual legal claims, including retaining

private investigators both in the United States and in China, who obtained information

concerning the Company and obtained the Company's regulatory filings in China.  *Id*., ¶¶3, 8,

32.   Additionally, Lead Counsel fully briefed three motions to dismiss, and has thus become

intimately familiar with the legal theories and obstacles involved in this Action prior to settling.

*Id*., ¶32.  This factor warrants approval of the Settlement.

### 4.    The Risk of Establishing Liability and Damages Strongly Weights in Favor of Approving the Settlement

"Litigation inherently involves risk."  *In re PaineWebber Ltd. Partnerships Litig*., 171

F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd sub nom., In re PaineWebber Inc. Ltd. P'ships Litig*., 117

F.3d 721 (2d Cir. 1997).   Indeed, "if a settlement has any purpose at all, it is to avoid a trial on

---

[6]     Plaintiff will address any objections, as well as any requests for exclusion, received after the date of this submission in its reply brief to be filed with the Court on November 6, 2015.

the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). This is especially so in securities class actions which present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in securities action presented "significant hurdles" to proving liability). "[T]he Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459.

Here, Lead Plaintiff faced considerable risk in establishing Defendants' liability. Although Plaintiff believes in the merits of its claims, there is no guarantee that Plaintiff's oppositions to Defendants' motions to dismiss would be successful. Additionally, BTHK, the Company's auditor, has argued that it cannot be held liable for the Company's misstatements which presents a serious risk of recovery as to it. Even if Plaintiff was successful in defeating Defendants' motions, Plaintiff faced the additional difficulty of attempting to obtain documents and testimony from witnesses in China. In fact, most, if not all, documentary evidence and witnesses are located in China and could be beyond Plaintiff's reach. *See China Tire Holdings Ltd. v. Goodyear Tire & Rubber Co.*, 91 F. Supp. 2d 1106, 1111 (N.D. Ohio 2000) (observing that "discovery by American attorneys in the [People's Republic of China] may prove to be impossible").

However, even if Plaintiff obtained the necessary discovery, and prevailed on its theory of liability, it would face formidable challenges to establishing causation and damages. Almost certainly, Defendants would attack Plaintiff's damages methodology and would vigorously argue

that factors other than Defendants' alleged misstatements caused the drop in SinoHub stock price.

An additional complication to obtaining a judgment is the fact that Defendants are located overseas and could challenge any judgment.  In their motions to dismiss, Defendants, among other things, also challenged the Court's jurisdiction with respect to the Individual Defendants Xia and Lui.  If the Court agreed with the Individual Defendants and found that personal service was not properly effectuated, Plaintiff would be left with no recourse whatsoever against the Individual Defendants.  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 617 (S.D.N.Y. 2014) ("Lack of personal jurisdiction is an affirmative defense.").

**5.      The Risk of Maintaining the Class Action Through the Trial Favors Approval of the Settlement**

No Class has yet been certified in this case.  However, even if this Court had certified a class, such decision is not immune from a possible reversal either upon motion of a party, by the Court, or on appeal.  *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207-JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings.").  The Settlement avoids any uncertainty with respect to these issues.  Thus, this factor weights in favor of final approval.

**6.      The Risk that Any Judgment Against the Company Would Be Uncollectible Is Significant**

Even if Lead Plaintiff prevailed at trial and obtained judgment against the Company, it is highly doubtful that Lead Plaintiff would ever be able to collect on that judgment.  SinoHub, which is presently defunct and delisted, maintains only minimal wasting insurance coverage written in Hong Kong.  Any recourse against the Individual Defendants could be futile.  The Company's CEO died in 2013 in China, leaving no attachable estate, in the U.S., while the

13

remaining Defendants are in China and potentially immune from a judgment.  The Settlement eliminates the risk of collectability by requiring Defendants to pay $600,000 into the Settlement Fund.  *See Advanced Battery*, 298 F.R.D. at 174 (approval heavily favored where defendant's U.S. assets were not significant enough to withstand a greater judgment and the majority of the Company's assets were located in China and collectability was questionable.); *Aramburu v. Healthcare Fin. Services, Inc.*, No. 02–CV–6535-MDG, 2009 WL 1086938, at *4 (E.D.N.Y Apr. 22, 2009) (approval favored where "defendant's 'dire financial condition,' [made] 'obtaining a greater recovery than provided by the [s]ettlement . . . difficult.'")(ellipsis in original); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (considering contribution of insurance policies to be minimal because the policies would be significantly depleted by defense costs or possibility of carrier disclaiming coverage).

### 7. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All Attendant Risk of Litigation Support Approval of the Settlement

The Settlement here is clearly reasonable in light of the serious risks.  As stated above, the Settlement is the Class' best possible recovery against the Company, which is severely precluded by the lack of any assets available to pay any unfavorable judgment.  "The best possible recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint *as well as the ability of Defendants to pay the judgment.*"  *Id.* (emphasis in original).   Where, as here, there is only "limited insurance coverage, minimal domestic assets, and significant risk of being unable to collect any judgment against the [Company]," the settlement amount is reasonable.  *See Advanced Battery*, 298 F.R.D.

at 179.[7]  The Settlement here is also reasonable in light of the substantial resources that can be conserved by avoiding the time, cost, rigor, and risk of prolonged litigation.  *See id.*

## V.   THE COURT SHOULD FINALLY APPROVE CERTIFICATION OF THE SETTLEMENT CLASS

### A.   The Class Definition

For purposes of effectuating the Settlement, the Parties stipulated, and this Court preliminarily approved, the certification of the following Settlement Class: "All persons or entities that purchased or otherwise acquired SinoHub's common stock" between May 17, 2010 and August 21, 2012 (the "Class Period").[8]  *See* §§1.4 and 1.6 of the Stipulation (ECF No. 126-1).  Therefore, Plaintiff respectfully requests the Court finally approve certification of the Settlement Class as set forth in the Stipulation.

### B.   Legal Standard for Class Certification

A court should grant final certification of a class for settlement purposes where the proposed class and class representative(s) satisfy the four requirements of Rule 23(a) − numerosity, commonality, typicality, and adequacy − as well as one of the three subsections of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-29, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).   In making this determination, "courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class."  *Steinberg v. Nationwide*

---

[7]     *See, e.g., Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 618 (N. D. Cal.1979) ("[S]imply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement.").

[8]     Excluded from the Class are the Defendants, officers, and directors of the Company, as well as their families and the families of the Defendants, those holding 5% or more of SinoHub's outstanding shares, and any member of the Class who has validly and timely requested exclusion from the Class.

*Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004).  Any doubts concerning the propriety of class

certification should be resolved in favor of certification.  *See Levitt v. J.P. Morgan Secs., Inc.*,

710 F.3d 454, 464 (2d Cir. 2013).  As set forth below, the requirements of Rule 23(a) and 23(b)

are met and final certification of the Class is clearly appropriate.

      **C.**      **The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)**

              **1.**      **The Class Is Sufficiently Numerous**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many

members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable"

does not mean that joinder of all parties must be impossible, but "only that the difficulty or

inconvenience of joining all members of the class make use of the class action appropriate."

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,

504 F.3d 229, 244-45 (2d Cir. 2007).  Joinder is generally presumed to be impracticable when a

putative class exceeds 40 members.  *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn.

2010).  Further, "in securities class actions relating to publicly owned and nationally listed

corporations, the numerosity requirement may be satisfied by a showing that a large number of

shares were outstanding and traded during the relevant period."  *In re NYSE Specialists Sec.

Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009).  Numerosity is presumed when a class consists of

forty members or more.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

1995).

Here, the Company's shares traded on the New York Stock Exchange, an open and

efficient market.  The proposed Claims Administrator has obtained from various brokers and

nominees 11,907 separate names and addresses of people who purchased SinoHub common

16

stock during the Class Period.   KCC Aff., ¶6.   This should persuade the Court that the numerosity requirement is met.

### 2.     Common Question of Law and Fact Exist

Commonality exists where there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This is not a demanding standard, as it "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims."  *Haddock v. Nationwide Fin. Services, Inc*., 262 F.R.D. 97, 116 (D. Conn. 2009).  The allegations in this case, namely that Defendants made material misstatements in the public filings and press releases regarding SinoHub and the sales of its products, and that damages to the investors were caused by Defendants' misstatements applies identically to virtually every member of the proposed Settlement Class.  Thus, there necessarily exists a unifying thread, establishing that commonality between members of the proposed Class exists.  Rule 23(a)(2) is therefore satisfied.

### 3.     Plaintiff's Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief.  *See Teachers' Ret. Sys. of La. v. ACLN Ltd*., No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *5 (S.D.N.Y. Dec. 27, 2004).  To establish typicality under Rule 23(a)(3), the party seeking certification must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  Here, as alleged, each Class Member's claim arises from the same general course of events, and each Class Member would present identical legal arguments to prove Defendants' liability.  Specifically, Lead Plaintiff alleges that Defendants publicly disseminated untrue and

misleading statements regarding the Company's prospects and growth and have thereby injured investors who relied on those statements in connection with the purchase or sale of the Company's common shares. Clearly, the lead plaintiff's claims are materially indistinguishable from those of other class members. *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 92 (D. Conn. 2010) (variation with respect to the date of purchase and sale are minor distinctions that will not preclude the propriety of class adjudication). Accordingly, Lead Plaintiff's claims are typical of the proposed Class Members'.

### 4.     Adequate Representation Is Satisfied

The requirement of adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement is satisfied where: (1) the proposed class representative's interests are not antagonistic to the interests of other class members; and (2) the proposed class counsel are qualified, experienced and able to conduct the litigation. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Both prongs are satisfied here. Through its efforts in this litigation, Lead Plaintiff already sufficiently demonstrated that the interests of Class Members are vigorously pursued. Further, there is no evidence that Lead Plaintiff's interests are in conflict with the Settlement Class. Like the proposed Class Members, Lead Plaintiff purchased or otherwise acquired SinoHub common stock and suffered significant losses as a result of the same conduct. Thus, the interests of the Lead Plaintiff are not antagonistic, and instead, are perfectly aligned with other Class Members. Indeed, this Court has previously found that the Lead Plaintiff was the "most adequate plaintiff" to represent the Class. *See* Order Appointing Ellsworth Investments Lead Plaintiff (ECF No. 24). Finally, Lead Plaintiff has retained, and this Court approved, Scott+Scott as Lead Counsel for the Proposed Class. As evident from the firm's résumé attached to the Scott Decl. as Exhibit A (Exhibit B to the Guglielmo Decl.), Scott+Scott has extensive experience in

the prosecution of complex securities class actions and has achieved numerous successful outcomes for its clients.

### A. The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)

#### 1. Common Legal and Factual Questions Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). In this regard, the courts analyze whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  As stated by the Supreme Court, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud. . . ." *Id.* at 625.

The central issues in this Action with respect to the Settlement Class arise out of Lead Plaintiff's grievance concerning Defendants' alleged dissemination of the false and misleading statements as well as their failure to disclose material adverse facts concerning SinoHub's compliance with GAAP, its internal controls, and its revenue recognition.  The common, predominant question asks whether Defendants are responsible for these alleged violations and the resulting damage caused to Lead Plaintiff and Class Members alike.  With respect to these alleged claims, all members of the Settlement Class are identically situated.  Indeed, once these common questions of liability are resolved, the only remaining task is to compute the Class Members' damages.  Thus, the proposed Settlement Class fulfills Rule 23(b)(3)'s predominance requirement.

### 2.    A Class Action Is the Superior Means to Adjudicate the Claims

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).  Together with predominance, the superiority requirement ensures that the class will be certified only when it would "achieve economies of the time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. 591, 615.

Here, the superiority requirement is met.  First, the claims of each individual Class Member are likely too small to warrant the cost of litigating individually, and it is therefore in the interest of all Class Members to proceed as a class.  Second, Lead Plaintiff is unaware of any existing parallel individual litigation currently pending against the Defendants, alleging violations of the securities laws.  Third, given the large and geographically dispersed Settlement Class, multiple lawsuits would have risked disparate results, threatening to increase the costs of litigation for all parties, and posing an unnecessary burden on the court system.  Thus, concentrating the litigation in one action, in this circuit, is highly desirable.  Finally, Lead Plaintiff does not envision any significant difficulties likely to be encountered in the management of this Action, rendering this Action appropriate for class treatment.

## VI.   NOTICE OF THE SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114; *Vargas v. Capital One Financial Advisors*, No. 13 Civ. 3262, 2014 WL 960935, at *3 (2d Cir. 2014).  It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007); *see* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal.").  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *Merrill Lynch,* 2007 WL 313474, at *8 (citing *Wal-Mart*, 396 F.3d at 114).

On July 22, 2015, the Court appointed KCC to supervise and administer the notice procedure as well as the processing of Class Members' Claims.  ECF 129 at ¶8..  KCC Aff., ¶1. Both the substance of the Class Notice and the method through which it was disseminated satisfied these standards.  The Parties' Court-approved Notice Plan described the nature, history, and status of the Action, including the Parties' asserted claims and defenses, set forth the terms and benefits of the Settlement, explained the rights of the Class Members, including their ability to be excluded, as well as the binding effect of the Settlement should they opt to remain in the class.  Additionally, the Class Notice fully disclosed the amount of attorneys' fees and expenses that Lead Plaintiff's Counsel intended to seek in connection with the final settlement approval of

the Action and the names and contact information of Lead Counsel.   The Notices likewise disclosed the date, time, and place of the Final Approval Hearing, and detailed the procedure for appearing and being heard at the Final Approval Hearing.

In accordance with the Court's Order, the Claims Administrator commenced its mailing of the Post-Card Notice and Proof of Claim Form (together, the "Notice Packet") to members of the Settlement Class that could be obtained from brokers and nominees.  *Id.*, ¶¶2-3.  On August 11, 2015, KCC caused Post Card Notices to be mailed to the 1,086 mailing records contained in KCC's Nominee Database.   *Id.*, ¶3.   Following the initial mailing, KCC has received an additional 8,238 unique names and addresses of potential Class Members from individuals or nominees requesting Post Card Notices to be mailed to such persons or entities.  *Id.*, ¶5.  Also, KCC received requests from nominees for an additional 1,605 Post Card Notices to be forwarded to their customers.   *Id.*   All such requests have been complied with in a timely manner.   *Id.*   As a result of the Claims Administrator's efforts, as of October 21, 2015, the Claims Administrator has mailed out a total of 11,907 Pose Card Notices.  *Id.*, ¶6.

In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* and a settlement website, www.SinoHubSettlement.com, providing access to downloadable copies of the Stipulation, Notice, Proof of Claim Form, and the various Exhibits referenced in the Stipulation, was established.   *Id.*, ¶¶7, 9.   Finally, the Claims Administrator has established a toll-free telephone number where Class Members can obtain additional information related to the Settlement.  *Id.*, ¶8.   The toll-free number is staffed by live operators during regular business hours and maintains a voicemail system that allows potential Class Members to leave a message when calling after regular business hours.  *Id.*   As of October 21, 2015, KCC has received a total of 49 calls to the telephone hotline.  *Id.*

This combination of individual first-class mail to all Class Members identified with reasonable effort, supplemented by a summary notice in two widely circulated publications, and an informative website, was "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process and Rule 23.  Fed. R. Civ. P. 23(c)(2)(B).

## VII.   THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Plaintiff also seeks the Court's final approval of the proposed Plan of Distribution.  "To warrant approval, the plan of allocation must [] meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate."  *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012).  Plans of allocation need not be tailored to fit each and every class member with "mathematical precision."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Rather, broad classifications may be used in order to promote "[e]fficiency, ease of administration and conservation" of the settlement fund.  *Id*. at 133-35.  Generally, "[a] plan of allocation that reimburses class members based on the extent of their injuries is [] reasonable."  *Maley*, 186 F. Supp. 2d at 367.

Plaintiff's damages expert developed a Plan of Distribution based on the theories of liability, loss causation, and damages at issue in this Action, and treats all potential claimants in a fair and equitable fashion.  Guglielmo Decl., ¶54.  According to the Court-approved Plan, each Authorized Claimant will be paid the *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's Recognized Claim as defined in the Plan of Distribution.  *Id.*, ¶55.  The *pro rata* share is based on each Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants.  *Id.*  As such, the Plan is designed to equitably distribute the settlement proceeds to those Class Members who have suffered an economic loss as a proximate

result of the alleged wrongful conduct and who have timely submitted valid Proof of Claims. *Id.*
Nothing more is needed to obtain the Court's final approval.

## VIII.   CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the
proposed Final Approval Order, (1) finally approving the Settlement; (2) certifying the Class for
settlement purposes; and (3) approving the proposed Plan of Distribution as fair, reasonable, and
adequate.

Dated: October 23, 2015

Respectfully submitted,
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

*/s/* Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
DONALD BROGGI
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com
         dbroggi@scott-scott.com

-and-

AMANDA F. LAWRENCE (AL-8804)
ANDREA FARAH (AF-7328)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax.: (860) 537-4432
Email: alawrence@scott-scott.com
         afarah@scott-scott.com

*Counsel for Lead Plaintiff*
*Ellsworth Investments Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of October, 2015 at New York, New York.

*/s/* Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com