**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SINOHUB<br>SECURITIES LITIGATION<br><br>This Document Relates to: All Actions | No. 1:12-cv-08478-WHP |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES,**
**EXPENSE REIMBURSEMENT, AND SERVICE AWARD**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY ...................................................... 2

III.    CLASS COUNSEL ARE ENTITLED TO AN AWARD OF REASONABLE
        ATTORNEYS' FEES ........................................................................................... 3

        A.      The Requested Attorneys' Fee Award Is Reasonable Under the Percentage
                Method ........................................................................................................ 4

        B.      The Requested Attorneys' Fee Award Is Reasonable Under the
                Lodestar Method ........................................................................................ 6

        C.      Application of the *Goldberger* Factors Confirms that the
                Requested Attorneys' Fees Are Reasonable ............................................. 8

                1.      The Magnitude and Complexities of the Action Support
                        the Requested Fee ......................................................................... 8

                2.      The Litigation Risks Involved Support the Requested Fee ......... 9

                3.      The Quality of Class Counsel's Representation Supports
                        the Requested Fee ....................................................................... 10

                4.      The Size of the Requested Fee in Relation to the
                        Recoveries Obtained Supports the Requested Fee ..................... 11

                5.      The Time and Labor Expended By Class Counsel Support
                        the Requested Fee ....................................................................... 12

                6.      Public Policy Considerations Fully Support the Fee Requested ............... 13

IV.     THE LITIGATION EXPENSES ARE REASONABLE AND
        WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT ................ 13

V.      LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES
        PURSUANT TO 15 U.S.C. §78u-4(a)(4) ......................................................... 15

VI.     CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.R. v. N.Y. City Dep't of Educ.,*
    407 F.3d 65 (2d Cir. 2005)..................................................................................6

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985)..........................................................................................13

*Blum v. Stenson,*
    465 U.S. 886 (1984)....................................................................................4, 5, 7

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.,*
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)..................................................................7

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000)..................................................................... *passim*

*Hicks v. Morgan Stanley,*
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................3, 4, 16

*Ho v. Duoyuan Global Water, Inc.,*
    887 F. Supp. 2d 547 (S.D.N.Y. 2012)..............................................................6, 8

*In the Matter of Continental Ill.,*
    962 F.2d 566 (7th Cir. 1992) .............................................................................5

*In re Am. Bus. Fin. Serv. Inc. Noteholders Litig.,*
    No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ...................................15

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
    No. 04 civ 8141 (DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012)....................16

*In re AOL Time Warner S'holder Derivative Litig.,*
    02 Civ. 6302(SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .........................8

*In re Arakis Energy Corp. Sec. Litig.,*
    No. 95-CV-3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001)............................14

*In re AT & T Corp., Sec. Litig.,*
    455 F.3d 160 (3d Cir. 2006).............................................................................6

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.,*
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...........................................................13, 14

*In re Bristol-Myers Squibb Sec. Litig.,*
    361 F. Supp. 2d 229 (S.D.N.Y. 2005)............................................................9, 13

*In re China Educ. Alliance, Inc. Sec. Litig.*,
No. CV 10-09239-CAS-JC, 2011 WL 3715969 (C.D. Cal. Aug. 22, 2011) ........................6, 8

*In re Currency Conversion Fee Antitrust Litig.*,
No. 1:01-md-1409-WHP (S.D.N.Y.) .....................................................................................15

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005).....................................................................................4

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. Jul. 27, 2007).................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................3, 4, 6, 13

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y 2004) ..........................................................................................10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................5

*In re KeySpan Corp. Sec. Litig.*,
No. 01-cv-5852 (ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ...............................11

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
842 F. Supp. 733 (S.D.N.Y. 1994)........................................................................................15

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp 1362 (N.D. Cal. 1996) ......................................................................................15

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ......................................................................................6, 13

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
Nos. 08-397 (DMC), 08-2177 (DMC), 2013 WL 5505744 (D.N.J. Oct. 1, 2013)...................7

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................................3, 5, 9

*In re Visa Check/MasterMoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................................13

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y.1985)..........................................................................................11

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)..............................................................................12, 13

*Lewy v. SkyPeople Fruit Juice, Inc.*,
No. 11-cv-02700 (PKC), 2011 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ............................6, 8

*Luciano v. The Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997) .................................................................................................7

*Maley v. Del Global Tech. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...............................................................................4, 9

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .............................................................................................................5

*Munoz v. China Expert Tech., Inc.*,
No. 07-cv-10531-AKH, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) ................................5, 8

*Perry v. Duoyuan Printing, Inc.*,
No. 10-cv-07235 (GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) ...........................5, 8

*Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA*,
907 F. Supp. 2d 536 (S.D.N.Y. 2012) ..................................................................................7

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
No. 01-CV-11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..............................10

*Tellabs, Inc. v. Makor Issues & Rights*, Ltd.,
127 S. Ct. 2499 (2007) .........................................................................................................4

*The Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .............................................................................................................3

*The City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..................................................................................6

*Varljen v. H.J. Meyers & Co., Inc.*,
No. 97 Civ. 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ..............................16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ...............................................................................................4, 6

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§78u-4(a)(4) ....................................................................................................................1, 15
§78u-4(a)(6) ..........................................................................................................................4

**OTHER AUTHORITIES**

1 Alba Conte, ATTORNEY FEE AWARDS §2.02 (2d ed. 1993) .........................................................5

Lead Plaintiff[1] Ellsworth Investments Limited ("Lead Plaintiff" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its application approving: (i) Plaintiff's Counsel's attorneys' fees in the amount of $150,000, or 25% of the $600,000 Settlement Fund, (ii) reimbursement of litigation expenses in the amount of $50,000 incurred in the prosecution of this action; and (iii) reimbursement of Lead Plaintiff's reasonable costs and expenses directly related to the representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4).

## I.    INTRODUCTION

Through their vigorous, persistent, and skilled efforts, Class Counsel have secured $600,000 cash settlement for the benefit of the Settlement Class. As set forth in Lead Plaintiff's Memorandum in Support of Motion for Final Approval of Class Action Settlement and Approval of Proposed Plan of Distribution ("Final Approval Memorandum"),[2] the Settlement is the result of substantial and vigorous advocacy and hard-fought, arm's-length negotiations conducted by skilled and experienced counsel. The Settlement is a highly favorable result, particularly when viewed in light of the clear and substantial risks of continued litigation, most notably Plaintiff's potential inability to collect on any judgment against Defendants, should one be rendered in Plaintiff's favor at trial. Under the Settlement, Authorized Claimants will receive a portion of the damages they sustained as a result of Defendants'[3] alleged misconduct. The Plan of

---

[1]      Unless otherwise noted, all capitalized terms are defined in the Stipulation, which, along with its exhibits, is attached to the Declaration of Joseph P. Guglielmo ("Guglielmo Decl.") filed on June 26, 2015 at ECF No. 126-1.

[2]      Plaintiff incorporates by reference the Final Approval Memo., filed concurrently herewith.

[3]      Defendants in this Action are: (i) SinoHub Inc. ("SinoHub" or the "Company") and Individual Defendants, Henry T. Cochran, De Hui Li, Lei Xia, Chi Keung Lui (collectively,

Distribution provided for in the Settlement is designed to equitably distribute the Settlement proceeds among the injured Class Members on a *pro rata* basis.

For their efforts in achieving this result, Class Counsel seek an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $150,000 plus reimbursement of $50,000 in expenses, which is less than Lead Counsel's total actual expenses. The requested fee represents a ***fractional*** or negative lodestar multiplier of 0.15, which also means, that Class Counsel is seeking 15% of the amount of time they actually billed to this case. Indeed, the requested fee is modest and certainly reasonable when considered under the applicable standards in this Circuit and is well within the normal range of awards made in other contingency-based securities class actions in the Second Circuit. Finally, Class Counsel are seeking a service award of $5,000, which reimburses Lead Plaintiff for its time and effort in bringing the action, reviewing court filings, and negotiating and approving the settlement.

Not surprisingly, the reaction of the Settlement Class has been overwhelmingly positive, demonstrating that Class Counsel have generated an excellent result for the Class. To date, no objections and no requests for exclusion have been received. KCC Aff., ¶¶10-11. The expenses requested by Class Counsel are likewise reasonable in amount and they were necessarily incurred in the successful prosecution of the litigation. Accordingly, reimbursement of expenses and Lead Plaintiff's service award also should be approved.

## II.    FACTUAL AND PROCEDURAL HISTORY

The Declaration of Joseph P. Guglielmo filed herewith ("Guglielmo Decl.") is an integral part of this submission. Plaintiff respectfully refers the Court to that Declaration for a detailed description of the factual and procedural history of the litigation, the extensive

---

"SinoHub Defendants"), and (ii) the Company's outside auditor, Baker Tilly Hong Kong ("Baker Tilly" or "BTHK"). On October 2, 2014, Lead Plaintiff filed a Suggestion of Death regarding Defendant Cochran (ECF No. 88).

investigation and discovery undertaken, the settlement negotiations, Plaintiff's Counsel's experience, and the numerous risks and uncertainties presented in this Action.

## III.   CLASS COUNSEL ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES

"[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class . . . the attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *see also The Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Courts in this district have long recognized that awards of attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thereby to discourage future alleged misconduct of a similar nature. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorney's fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so"). Accordingly, compensating Class Counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if [Class] [C]ounsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). Indeed, the Supreme Court has emphasized that private securities cases, such as this litigation, are "'an indispensable tool with which defrauded investors can

recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499, 2508 n.4 (2007).

A.     **The Requested Attorneys' Fee Award Is Reasonable Under the Percentage Method**

In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier. *Goldberger*, 209 F.3d at 49. The Second Circuit has authorized district courts to employ a percentage-of-the-fund method, when awarding fees in common fund cases. *Giant Interactive,* 279 F.R.D. at 163; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 373 (S.D.N.Y. 2005). The Supreme Court likewise has indicated that attorneys' fees in common fund cases should generally be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The percentage method is deemed preferable "because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks,* 2005 WL 2757792, at *8. Moreover, the use of the percentage method comports with the statutory language of the PSLRA which specifies that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class ...." 15 U.S.C. §78u-4(a)(6); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (noting that in amending the PSLRA, Congress "indicated a preference for the use of the percentage method").

Notably, the percentage method is consistent with the national precedent in the context of securities laws. *Telik,* 576 F. Supp. at 586.

The guiding principle of what constitutes a reasonable fee is based upon what counsel would receive if they were bargaining for the service in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this Action was a non-representative litigation, the customary fee likely would be contingent, on a percentage basis, and 33.33% of the recovery. *See Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *see also In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *17 (S.D.N.Y. Dec. 19, 2014) (33.33% fee, plus expenses and interest, is consistent with courts in the Second Circuit and nationwide). Accordingly, a 25% benchmark was "born from judicial practice and experience [that] reflects the best estimate of what the market practice would be in a typical common fund case. *See Goldberger*, 209 F.3d at 51(citing 1 Alba Conte, ATTORNEY FEE AWARDS §2.02 (2d ed. 1993)); *see id*. at §2.08; *In the Matter of Continental Ill.*, 962 F.2d 566, 572 (7th Cir. 1992). This figure is also consistent with a 2014 study by NERA Economic Consulting which found that during 2011-2013, median attorneys' fees in settlements of less than $5 million were 30% of the settlement value.[4] In this district alone, there are scores of common fund settlements of securities class actions involving Chinese reverse merger companies where fees were awarded in the range between 25%-33% of the settlement fund. *See, e.g.*, *Munoz v. China Expert Tech., Inc.*, No. 07-cv-10531-AKH, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) (awarding 25% of the settlement fund); *Perry v. Duoyuan Printing, Inc.,* No. 10-

---

[4]     Comolli and Starykh, *Recent Trends in Securities Class Action Litigation: 2013 Full-Year Review, Large settlements get larger; small settlements get smaller*, NERA ECONOMIC CONSULTING, at 34 (Jan. 21, 2014), http:// www.nera.com/ content/dam/nera/publications/archive2/PUB_2013 Year_End_Trends_1.2014.pdf.

cv-07235 (GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) (awarding 33% of the settlement fund); *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11-cv-02700 (PKC), 2011 WL 3957916 (S.D.N.Y. Sept. 10, 2012) (awarding 25% of the settlement fund); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388 (S.D.N.Y. 2008) (awarding 28% of the settlement fund); *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) (awarding 33% of the settlement fund); *see also In re China Educ. Alliance, Inc. Sec. Litig.*, No. CV 10-09239-CAS-JC, 2011 WL 3715969 (C.D. Cal. Aug. 22, 2011) (awarding 25% of the settlement fund).

Accordingly, there is ample precedent from courts within the Second Circuit and this district, as well as empirical evidence, to support the requested fee.  Thus, the 25% fee requested here is perfectly in line when compared to other fee awards granted in a number of similar securities class actions in the circuit and district.

### B.   The Requested Attorneys' Fee Award Is Reasonable Under the Lodestar Method

Although the Second Circuit disfavors the application of the lodestar method, *Wal-Mart*, 396 F.3d at 122, it nevertheless encourages district courts to cross-check the percentage fee against counsel's 'lodestar' amount.  *Giant Interactive*, 279 F.R.D. at 163.  The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method.  *In re AT & T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).  Under the "lodestar" method, "an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 170-1 (S.D.N.Y. 2007) (quoting *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 79 (2d Cir. 2005)).  The hourly billing rate to be applied is the normal hourly billing rate, so long as that rate conforms to the billing rate charged by attorneys with similar experience in the community where the counsel practices, *i.e.*, the "market rate."

*See Blum*, 465 U.S. at 895; *Luciano v. The Olsten Corp*., 109 F.3d 111, 115 (2d Cir. 1997) ("[The] 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'").

Class Counsel has affirmed that their attorneys' 2012-2015 hourly rates used in this case were and are the regular rates charged by Scott+Scott by these attorneys and are consistent with the rates charged where the firm is located. *See* Scott Decl., ¶5.[5] Class Counsel believe that these rates are reasonable and consistent with hourly rates approved in other class actions in this district. *See, e.g.*, *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277 (S.D.N.Y. 2013) (approving Scott+Scott attorneys' hourly rates ranging from $390 to $635 for associates and $660 to $775 for partners, as set forth in ECF No. 194); *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012) (approving fee award based on Scott+Scott attorneys' hourly rates ranging from $380 to $635 for associates and $635 to $775 for partners, as set forth in ECF No. 303-2); *The City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM) (GWG), 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (finding partner rates of $640 to $875 and non-partner attorney rates of $335 to $725 to be line with defense firms); *In re Schering-Plough Corp. Enhance Sec. Litig*., Nos. 08-397 (DMC), 08-2177 (DMC), 2013 WL 5505744, at *33 n.27 (D.N.J. Oct. 1, 2013) (approving senior partners' hourly rates of $975).

Thus, a market check and precedent demonstrate that the rates utilized by counsel are reasonable.

Here, Class Counsel devoted more than 1,932 hours to performing work for the benefit of the Settlement Class, for an aggregate lodestar of $992,931. *See* Scott Decl., ¶5. Thus, the

---

[5]    *See* Declaration of Daryl F. Scott ("Scott Decl."), a true and correct copy of which is attached as Exhibit B to the Guglielmo Decl.

aggregate attorneys' fee request represents a ***fractional*** or negative lodestar multiplier of 0.15 — much less than Class Counsel's lodestar.  Put another way, Class Counsel are asking for 15% of the fees they actually billed to this case.  This figure is well within the range of reasonableness because lodestar multipliers of 1 to 3 have typically been approved by this district in similar cases.  *See, e.g.*, *Munoz,* 2011 WL 5346323 (lodestar of 2.17); *Perry,* 2013 WL 4505199 (lodestar of 1.39); *SkyPeople,* 2011 WL 3957916 (lodestar of 1.36); *Duoyuan Global,* 887 F. Supp. 2d 547 (lodestar of 0.97); *also see In re China Educ.,* 2011 WL 3715969 (lodestar of 1.66).

Accordingly, the attorneys' fees representing a ***fractional*** lodestar multiplier of 0.15 are plainly reasonable using a lodestar cross-check.

### C.     Application of the *Goldberger* Factors Confirms that the Requested Attorneys' Fees Are Reasonable

Whether the fee is calculated using the lodestar or percentage method, courts consider the factors set forth by the Second Circuit in *Goldberger*, 209 F.3d at 52.  To determine the reasonableness of the fee application in a common fund case, courts consider the following factors: (1) the magnitude and complexities of the action; (2) the litigation risks involved; (3) the quality of class counsel's representation; (4) the size of the requested fee in relation to the recoveries obtained; (5) the time and labor expended by class counsel; and (6) public policy considerations.  *Id*.

Consideration of the foregoing *Goldberger* factors confirms that the attorneys' fees requested here are reasonable.

#### 1.     The Magnitude and Complexities of the Action Support the Requested Fee

As a general matter, securities litigation is "'notoriously difficult and unpredictable.'"  *In re AOL Time Warner S'holder Derivative Litig.*, 02 Civ. 6302(SWK), 2006 WL 2572114, at *3

(S.D.N.Y. Sept. 6, 2006). Even before passage of the PSLRA, courts had noted that "a securities case, by its very nature, is a complex animal." *Maley*, 186 F. Supp. 2d at 372. Following passage of the PSLRA, securities class actions have only become more difficult to prosecute. This case is no exception. However, in addition to the common complexities of a securities class action, Class Counsel faced the additional challenges that most documentary evidence and witnesses, including the Defendants, are located in China. *See* Guglielmo Decl., ¶¶28, 34. Moreover, the claims asserted in this case concerned application and interpretation of the U.S. Generally Accepted Accounting Principles, loss causation, and damages, all of which would necessitate the retention of multiple experts. *Id.,* ¶¶27, 62. Had the case moved towards trial, additional motion practice would have prolonged the case and the remaining proceeds from the wasting insurance policy would have been depleted. *Id.,* ¶¶28, 63, 73. By the time the case proceeded to judgment, Class Counsel could have had difficulty in collecting or enforcing any judgment. *Id.,* ¶¶36, 38. Accordingly, the complexities of this Action more than justify Class Counsels' fee application.

### 2.    The Litigation Risks Involved Support the Requested Fee

Courts have repeatedly recognized that "the risk of the litigation" is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions. *See, e.g., Telik*, 576 F. Supp. 2d 570; *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("[The] most important, *Goldberger* factor is the risk in pursuing the case."). Here, as fully described in Section IV.B.6 of Plaintiff's Final Approval Memorandum, and in the Guglielmo Decl., ¶¶36, 38, Class Counsel faced significant risks that they might be unsuccessful in obtaining a recovery for the Class and, therefore, they would receive no payment for their efforts. Despite these uncertainties, Class Counsel were obliged to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action and that

sufficient litigation and overhead expenses were advanced to support the case for nearly three years. *Id.*, ¶66.

Moreover, Class Counsel's ability to enforce and collect on any judgment would be difficult, if not highly unlikely. *Id.*, ¶38. SinoHub is presently defunct and delisted and has no U.S. assets. *Id.* Any recourse against the Individual Defendants likewise could be futile, as the Company's CEO died in 2013 in China, leaving no attachable estate while the remaining Individual Defendants are located in China and potentially immune from any judgment. *Id.* Accordingly, the litigation risks here strongly support settlement and the recovery obtained here.

### 3. The Quality of Class Counsel's Representation Supports the Requested Fee

To evaluate the "quality of the representation," courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y 2004). Here, Class Counsel obtained a reasonable recovery for the Class Members of between approximately 5.1% and 7.6% of total compensable damages pursuant to the Plan of Allocation. Given the challenges that arose during the litigation and the likelihood of complete non-recovery in the event that the litigation continued, the Settlement obtained constitutes an excellent result for the Class Members. The overwhelmingly positive reaction of the Class to the Settlement further demonstrates that Lead Plaintiff's Counsel have generated an excellent result. Over 11,907 Post Card Notices have been mailed to the Class. KCC Aff., ¶6. To date, there have been no objections and no requests for exclusion from the Settlement. KCC Aff., ¶¶10-11.

In addition, Class Counsel have many years of experience in complex federal litigation, particularly in the prosecution of securities fraud class actions. *See* Guglielmo Decl., ¶69. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *6

(S.D.N.Y. May 14, 2004) (the skill and prior experience of counsel in the field is relevant to determining fair compensation).  The high quality of representation provided by Class Counsel is evident from the extensive record of this case, as well as from firm resumes that counsel have submitted to the Court.[6]

"The quality of opposing counsel is also important in evaluating the quality of Class Counsels' work."  *In re KeySpan Corp. Sec. Litig.*, No. 01-cv-5852 (ARR), 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005) (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y.1985)).  Here, Defendants were represented by law firms of national repute with vast resources and attorneys who are highly skilled and experienced.  *See* Guglielmo Decl., ¶70. The ability of Class Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation. Accordingly, the quality of representation weighs in favor of approving the requested fee.

### 4.    The Size of the Requested Fee in Relation to the Recoveries Obtained Supports the Requested Fee

Class Counsel requests 25% of the Settlement.  This figure is perfectly in line with the law in this Circuit and with other similar securities cases involving Chinese reverse merger companies which settled in the Second Circuit and before this Court in the past.  *See* § III.A. *supra*.

Indeed, where, as here, "class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the

---

[6]         Scott-Scott, Attorneys at Law, LLP's firm résumé, detailing its experience and qualifications is attached as Exhibit A to the Scott Decl.

court should give the terms of that agreement great weight." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 353 (S.D.N.Y. 2005).

<div align="center">

**5.    The Time and Labor Expended By Class Counsel Support the Requested Fee**

</div>

As detailed in the Guglielmo Decl., ¶¶7-13, 17-26, 32, 73-75, the Settlement here was reached after over three years of active litigation and motion practice.  In the course of the litigation, Class Counsel: (1) conducted an extensive pre-filing investigation into the various factual and legal claims against SinoHub and the Individual Defendants that resulted in the filing of the original complaint; (2) moved, pursuant to the PSLRA and on behalf of Ellsworth Investments for appointment of Lead Plaintiff and Lead Counsel; (3) oversaw investigative efforts of private investigators, both in the United States and in China, who obtained information concerning the Company, obtained the Company's regulatory filings in China, and sought to discover Individual Defendants' addresses and governmental identification numbers for purposes of service in China; (4) conducted repeated attempts to serve the Individual Defendants under the Hague Convention; (5) fully briefed oppositions to Defendants' three motions to dismiss; (6) engaged in multiple in-person and telephonic meet-and-confers regarding the resolution of this Action; and (7) retained and consulted with an expert in the field of damages for the claims in this case.  *Id.*

The process by which this Action was resolved was also lengthy.  Settlement was only reached after Class Counsel participated in numerous in person and telephone mediations with Defendants and their carriers.  Class Counsel then spent weeks negotiating the specific terms of the settlement agreement.  *Id.*, ¶¶18-22.  The efforts that were required to complete these tasks were extensive and represented an immense risk, given the contingency-based nature of Class Counsel's representation.  *Id.*, ¶56.  To date, Class Counsel have spent 1,932.2 hours litigating

this case.   *See* Scott Decl., ¶5.   Class Counsel have also incurred $54,712 in, as yet, unreimbursed litigation expenses.  Scott Decl., ¶6.

Accordingly, the Court should find that a settlement at this stage benefits the Class, and that the time and labor Class Counsel invested in this case supports the requested fee.

### 6.     Public Policy Considerations Fully Support the Fee Requested

Public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation. *See WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").  Indeed, the Supreme Court has emphasized that private securities actions, such as the one here, provide the "'most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).  Moreover, "[w]here, [as here], many if not most Class Members are individual investors, public policy supports an award sufficient to encourage counsel to act on behalf of such investors."  *Merrill Lynch*, 246 F.R.D. at 175; s*ee also Bristol-Myers*, 361 F. Supp. 2d at 236; *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003).

Accordingly, public policy concerns weigh in favor of awarding the requested fee.

## IV.   THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class.  *Giant Interactive*, 279 F.R.D. at 165; *also see In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) ("It is well-settled that 'attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.'").  "Courts in the Second Circuit

normally grant expense requests in common fund cases as a matter of course." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *18 (S.D.N.Y. Jul. 27, 2007) (quoting *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001)).

As detailed in the Scott Decl., although Class Counsel incurred a total of $54,712 in litigation expenses on behalf of the Settlement Class in the prosecution of this Action, they are only seeking $50,000 in reimbursement consistent with the Notice. *See* Scott Decl., ¶6. These expenses were necessarily incurred during litigation and are of the type routinely charged to clients billed by the hour. *Id.*, ¶5. These expenses include, among others, (1) the cost of consultants and investigators; (2) Hague service fees; (3) Court fees; (4) travel expenses and court reporting services; (5) the cost of photocopying; and (6) postage and delivery expenses. *Id.*

The largest component of Class Counsel's expenses — nearly one half of the entire bill — was incurred in connection with locating and serving Defendants in China. In this regard, Class Counsel incurred costs for (1) a private investigator who sought to locate and identify the proper parties; (2) the mandatory translation of documents into the Chinese language under the Hague Convention; and (3) repeated attempts to effectuate service on the Individual Defendants in China. Undeniably, these costs were necessarily incurred for purposes of perfecting valid service under the Federal Rules of Civil Procedure.

A significant component of Class Counsel's expenses was the cost of Plaintiff's damages expert, who was retained to calculate the total estimated damages and to prepare the Plan of Distribution that provided for adequate recoveries to all Class Members. The Plan of Distribution became an integral part of the Settlement and ultimately, the Notice disseminated to the Class Members. *See Bear Stearns Cos.*, 909 F. Supp. 2d at 272 (observing that "massive

expenditure for expert fees is wholly unsurprising [in light of] the many core issues that turn upon expert opinions").

Plaintiff also incurred significant expenses while performing computerized research. These charges include fees for the use of research legal databases such as LexisNexis, Westlaw, Bloomberg, Thompson, and Pacer.  *See In re Currency Conversion Fee Antitrust Litig.*, No. 1:01-md-1409-WHP (S.D.N.Y.) (approving $62,328.75 in computerized legal research as set forth in ECF Nos. 984, 996); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp 1362, 1371 (N.D. Cal. 1996); *In re Am. Bus. Fin. Serv. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (online legal research reimbursable).

Other significant expenses that were necessarily incurred in the prosecution of this Action include expenses for photocopying, postage, overnight deliveries, and long distance telephone charges.  These, as well, are customarily reimbursed in common fund cases.  *See In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994).

Notably, the Notice disseminated to Class Members affirmed that Class Counsel will not seek reimbursement of litigation expense in excess of $50,000.  While the time to object to Class Counsel's fee and expense request does not expire until October 29, 2015, to date, no Class Member has objected to this figure.  KCC Aff., ¶¶10-11.  In sum, because all these expenses were necessarily incurred in the course of the prosecuting this Action and are reasonable in amount, they are properly charged against the Fund created.  *See McDonnell Douglas*, 842 F. Supp. at 746.

## V.   LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4)

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits the Lead Plaintiff in this case, Ellsworth Investments, to recoup litigation costs (including lost wages) incurred as a result of serving as

Lead Plaintiff in the Action and ensuring that the Class was adequately represented. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.,* No. 97 Civ. 6742 (DLC), 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000). Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10; *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 civ 8141 (DAB), 2012 WL 345509, at *6 (S.D.N.Y. Feb. 2, 2012).

Here, Ellsworth Investments respectfully requests reimbursement of costs and expenses in the amount of $5,000. *See* Ellsworth Decl., ¶10. As set forth in its Declaration, Ellsworth Investments stepped forward to represent the Class and devoted many hours to participating in this litigation, including, *inter alia,* (1) regularly communicating with counsel by email and telephone regarding the posture and progress of the case; (2) reviewing and discussing with counsel Lead Plaintiff's complaint, amended complaint, briefing before this Court, and the Court's orders; (3) instituting a "litigation hold" to ensure that documents related to this litigation would not be lost or destroyed; (4) providing information, including documents, to counsel; (5) discussing settlement strategy with counsel; (6) communicating with counsel regarding the settlement process and procedure; and (7) reviewing the draft settlement agreement, the Court's Order preliminarily approving the settlement and discussing issues relevant to the settlement, including counsel's request for attorneys' fees and expenses. *See* Ellsworth Decl., ¶7.

## VI.    CONCLUSION

Based on the foregoing, Class Counsel respectfully request that the Court grant their request for (1) an award of attorneys' fees in the amount of $150,000, or 25% of the Settlement Fund; (2) reimbursement of $50,000 in litigation expenses Class Counsel incurred in the prosecution of the Action; and (3) reimbursement of $5,000 incurred by Lead Plaintiff.

16

Respectfully submitted.

Dated: October 23, 2015                    **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

*/s/* Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
DONALD BROGGI
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com
        dbroggi@scott-scott.com

 -and-

AMANDA F. LAWRENCE (AL-8804)
ANDREA FARAH (AF-7328)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax.: (860) 537-4432
Email: alawrence@scott-scott.com
        afarah@scott-scott.com

*Counsel for Lead Plaintiff*
*Ellsworth Investments Limited*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of October, 2015 at New York, New York.

<div style="margin-left: 40%;">

*/s/* Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com

</div>