**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE SINOHUB SECURITIES LITIGATION<br><br>This Document Relates To:<br>All Actions | Master File No: 1:12-cv-08478-WHP |

**DECLARATION OF JOSEPH P. GUGLIELMO IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PROPOSED PLAN OF DISTRIBUTION AND MOTION FOR ATTORNEYS' FEES, EXPENSE REIMBURSEMENT, AND SERVICE AWARD**

I, Joseph P. Guglielmo, pursuant to 28 U.S.C. §1746, declare that the foregoing is true and correct to the best of my knowledge and belief:

1.      I am an attorney duly licensed in the states of New York and Massachusetts and am admitted to practice in this District.  I am a partner with the law firm of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott"), Lead Counsel for Lead Plaintiff, Ellsworth Investments Limited ("Lead Plaintiff").  I have personal knowledge of the facts stated herein based on my active, day-to-day supervision and participation in the prosecution and settlement of this matter on behalf of Lead Plaintiff and the Settlement Class, and if called upon, I could and would competently testify thereto.

2.      I submit this Declaration in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Proposed Plan of Distribution ("Motion for Final Approval") and Motion for Attorneys' Fees, Expense Reimbursement, and Service Award ("Fee and Expense Motion").

## I.    INTRODUCTION

3.    I and my firm, Scott+Scott, have been responsible for the prosecution of this Action from its outset, starting with pre-suit investigation prior to the commencement of the Action.  I have then continued to participate in all aspects of the litigation, including Plaintiff's protracted efforts to effectuate service on the Individual Defendants in China, briefing three dispositive motions, settlement negotiations, and ultimately, briefing and preliminary approval of the Settlement.  As a result of my active involvement in the case, I have become intimately familiar with the factual underpinnings of this case, the legal theories asserted as well as their weaknesses and strength and the affirmative defenses set forth by Defendants.

4.    In addition to seeking final approval of the Settlement, Class Counsel request an award of attorneys' fees, reimbursement of litigation expenses, and service award (the "Fee and Expense Motion").  Specifically, Class Counsel are applying for a fee award of $150,000 (or, 25% of the Settlement Fund), and for reimbursement of Class Counsel's litigation expenses in the amount of $50,000.

5.    Class Counsel respectfully submit that the Fee and Expense Motion is justified given the significant and certain benefit conferred on the Settlement Class, particularly when viewed in light of the Company's financial situation and the attendant risk of collectability.  As explained in the accompanying memorandum in support of Class Counsel's motion for attorneys' fees, the requested fee of 25% of the Settlement Fund is consistent with or less than the amount awarded in other complex securities class actions in this Circuit.  In addition, Lead Plaintiff who is a sophisticated institutional investor and who had active involvement in the prosecution and resolution of the Action, supports the award of attorneys' fees in the requested amount.

6.     Based upon our experience, evaluation of the facts and applicable law and the recognition of the risk and expense of continued litigation, Lead Plaintiff and Class Counsel firmly believe that the proposed Settlement is "fair, reasonable and adequate" in all respects, and that the Court should therefore approve it pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  Likewise, Class Counsel respectfully submit that the Fee and Expense Motion is merited under the circumstances and should likewise be approved.

## II.     HISTORY OF THE ACTION

7.     The above-captioned class action was filed on November 20, 2012 in the United States District Court for the Southern District of New York (the "Court") as a securities class action on behalf of the proposed Class, against SinoHub, Inc. ("SinoHub" or "Company") and some of its officers and directors, as well as against its outside auditor, Baker Tilly Hong Kong ("BTHK" or "Baker Tilly"), asserting claims for violations of §10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5 enacted thereunder.  ECF No. 1.  On March 4, 2013, this Court entered an order appointing Ellsworth Investments Limited as Lead Plaintiff and Scott+Scott as Lead Counsel.  ECF No. 24.

8.     On April 12, 2013, Lead Counsel filed a motion to authorize service on Defendants Cochran, Xia, and Lui pursuant to Fed. R. Civ. P. Rule 4(f)(3).  ECF No. 33. Previously, Lead Counsel retained Gryphon Investigations, Ltd. to obtain the home addresses and government identification numbers of three of the Individual Defendants, Henry Cochran, De Hui Li, Lei Xia, and Daniel Chi Keung Lui.  Despite the investigator's vigorous efforts, Lead Counsel failed to collect information sufficient to effectuate service via the Hague Convention. Lead Counsel thus sought the Court's permission to effectuate service by alternative means, namely, by service on Seyfarth Shaw — legal counsel who previously represented SinoHub in connection with the Company's filings with the SEC and its issuance and sale of 4.9 million

shares of common stock.   The efforts to obtain information for service are detailed in the Declarations of Joseph Guglielmo, ECF Nos. 31 and 32, and the Declaration of Alex Vargas, ECF No. 38.

9.     On August 14, 2014, the Court granted Plaintiff's motion to serve Defendant Cochran pursuant to Rule 4(f)(3) but denied the motion to serve Defendants Lui and Xia.   ECF No. 41.

10.     On April 10, 2014, Lead Counsel filed a proof of service for Baker Tilly.   ECF No. 49.   On April 22, 2014, Lead Counsel served Defendant Xia and on August 29, 2014, Lead Plaintiff filed a proof of service on Defendant Lui.   ECF No. 76.

11.     As part of its efforts to effectuate service, Lead Counsel amended the Complaint on September 16, 2013 to conform to the requirements of the Hong Kong Special Administrative Region.   ECF No. 44.

12.     Following protracted service attempts, in July 2014, Plaintiff perfected service on SinoHub, Defendant De Hui Li and BTHK, all of whom moved to dismiss Plaintiff's Complaint in its entirety.   ECF Nos. 65, 68, 90.   Defendants' motions argued that, as a matter of law, Plaintiff could not establish loss causation, as nearly all of SinoHub's stock price decline occurred before the alleged curative disclosures.   Moreover, Defendants argued that Plaintiff's Complaint could not withstand the heightened pleading standard as to the allegations regarding scienter and falsity.   Individual Defendants Cochran, Xia, and Lui also asserted an affirmative defense, arguing that proper service pursuant to Fed. R. Civ. P. 4(a) had never been effectuated and denying that the Court had personal jurisdiction over them.

13.     Plaintiff filed a comprehensive response to all three motions to dismiss on December 10, 2014, rebutting each argument raised by Defendants.   ECF No. 96.

## III.    THE SETTLEMENT

### A.    The Terms of the Settlement

14.    The Settlement Agreement defines the Class as "all persons or entities that purchased or otherwise acquired SinoHub's common stock between May 17, 2010, and August 21, 2012 (the "Class Period").  *See* Stipulation §1.4.

15.    The Settlement calls for the payment of $600,000 in cash by Defendants to the Settlement Class in exchange for the Class' dismissal with prejudice of all pending claims against Defendants.  The Settlement benefits the Class by conferring a guaranteed, immediate, and substantial benefit of $600,000 and avoids the substantial risks and uncertainties of continued litigation.

16.    The Net Settlement Fund is to be distributed pursuant to the Plan of Distribution to those Class members who submit valid and timely claims (the "Authorized Claimants").  *See* Stipulation §§1.1, 1.20, 5.1, 5.6.  The Plan is designed to equitably distribute the settlement proceeds to those who suffered economic loss as a result of the alleged Defendants' alleged misconduct.  Accordingly, Authorized Claimants will be paid on a *pro rata* basis.  *Id.*, §5.8.

17.    The Plan of Distribution was formulated with the assistance of damages experts, after discussions with Class Counsel, regarding, among other things, an estimate of the damages suffered by Class Members, the likelihood of establishing liability for various periods of the Class, and the relative strengths and weaknesses of their respective claims.

### B.    The Settlement Negotiations

18.    The Parties began settlement negotiations as early as 2012.

19.    In the fall of 2014, the Parties began to discuss a possible resolution of the action. Defendants provided Lead Plaintiff with insurance policy documents and information on the amounts remaining in the wasting policies.

20.     Thereafter, the Parties continued to regularly discuss the possibility of achieving settlement of the action.  The Parties held an in-person meeting to discuss a resolution of the action on October 9, 2014.  At that time, the Parties were unable to reach a resolution despite exchanging, considering, and rejecting a number of settlement proposals.  Thereafter, the Parties held conference calls to further discuss the possibility of settlement.

21.     The Parties held an in-person mediation session on November 18, 2014. Thereafter, the Parties continued to exchange settlement proposals.

22.     Finally, during the week of December 15, 2014, the Parties reached an agreement in principle and, on January 21, 2015, the Parties executed the Stipulation, which is subject to the approval of the Court.

23.     Thereafter, a dispute arose regarding what Lead Plaintiff believed to be an agreement to settle the Li Derivative Action as part of the settlement in this case.  Following a motion practice in this Court concerning that issue, on June 3, 2015, this Court denied Lead Plaintiff's motion to enforce that agreement.  ECF No. 122.

24.     Recognizing the significant risk of continued litigation, the Parties nevertheless agreed to proceed with the Settlement after making certain modifications to its language.

25.     Thereafter, on June 26, 2015, Lead Plaintiff filed the Stipulation with its Motion for Preliminary Approval of Class Action Settlement.  ECF No. 124.

26.     This Court granted preliminary approval of the class action settlement on July 22, 2015.  ECF No. 129.

IV. **CLASS COUNSEL FIRMLY BELIEVE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

A. **The Complexity of the Action Favors Settlement**

27.     This Action was unquestionably complex as it involved complicated securities fraud claims against international corporate, individual defendants, and an auditor, which would ultimately necessitate the retention of multiple experts on the issues of loss causation and damages.  Absent the Settlement, the Parties would have had to argue the motions to dismiss briefing, engage in extensive discovery, brief, and argue class certification.

28.     Discovery in this matter would certainly be extremely difficult, costly, and time-consuming given that it would need to be obtained from China.  There is no doubt, that should such process occur, the remaining proceeds from the wasting Directors and Officers insurance policy would have been depleted by the time the case proceeded to trial.

B. **The Reaction of the Settlement Class Is Overwhelmingly Positive**

29.     The reaction of the Class to this Settlement has been entirely positive.

30.     On August 11, 2015, the Class was notified of the Settlement by First-Class U.S. Mail, publication, and the Internet.  *See* KCC Aff.[1], ¶¶2, 7, 9.  Post Card Notices of the Settlement were mailed a total of 11,907 potential Class Members and Nominees.  *Id*., ¶6.  A Summary Notice was published in the *Investor's Business Daily* and *PR Newswire* on August 11, 2015.  *Id*., ¶7.  The average readership of the Investor's Business Daily on Tuesdays is over 300,000 and the press release was distributed to more than 6,500 press outlets throughout the U.S.  *Id.*  Moreover, a dedicated website, www.SinoHubSettlement.com, was created and all relevant documents and dates were posted thereon.  *Id*., ¶9.  A toll-free telephone number was

---

[1]     "KCC Aff." refers to the Affidavit of Justin R. Hughes Regarding (A) Mailing of the Post Card Notice; (B) Publication of the Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; (E) Report on Requests for Exclusion and Objections, attached hereto as Exhibit A.

also established for potential Class Members to call and obtain additional information related to the Settlement. *Id.*, ¶8.

31.     To date, no objections and no requests for exclusion have been received. *Id.*, ¶¶10-11.

### C.     Class Counsel Had Adequate Appreciation of the Merits of the Case Before Settling

32.     The Settlement here was reached after over three years of active litigation and motion practice. Although no formal discovery was taken, as detailed in Plaintiff's Motion for Preliminary Approval, Lead Counsel has conducted an extensive investigation into the factual legal claims, including retaining private investigators both in the United States and in China, who obtained information concerning the Company, including its regulatory filings in China. Additionally, the Lead Counsel fully briefed three motions to dismiss, and has thus become intimately familiar with the legal claims and defenses involved in this Action prior to settling.

### D.     The Risk of Establishing Liability and Damages Strongly Weigh in Favor of Approving the Settlement

33.     Plaintiff faced considerable risk to establish Defendants' liability. Although Plaintiff believes in the merits of its claims, there is no guarantee that Plaintiff's opposition to Defendants' motions to dismiss would be successful. Additionally, Baker Tilly, the Company's auditor, has argued that it cannot be held liable for the Company's misstatements, which presents a serious risk of recovery as to it.

34.     Even if Plaintiff was successful at defeating Defendants' motions, Plaintiff faced the additional difficulty of attempting to obtain documents and testimony from witnesses in China. In fact, most, if not all, documentary evidence and witnesses are located in China and could be beyond Plaintiff's reach.

35.     In addition, Plaintiff would face formidable challenges to establish causation and damages.   Almost certainly, Defendants would attack Plaintiff's damages methodology and would vigorously argue that factors other than the Defendants' alleged misstatements caused the drop in SinoHub stock price.

36.     An additional complication to obtaining a judgment is the fact that Defendants are located overseas and collection of a judgment could be difficult, if not impossible.   In their motions to dismiss, Defendants, among other things, also challenged the Court's jurisdiction with respect to the Individual Defendants.   If the Court agreed with the Individual Defendants and found that personal service was not properly effectuated, Plaintiff would be left with no recourse whatsoever against the Individual Defendants.

37.     No Class has yet been certified in this case.   However, even if this Court had certified a class, such decision is not immune from a possible reversal either upon motion of a party, by the Court, or on appeal.   The Settlement avoids any uncertainty with respect to these issues.

**E.      Additional Risks in Connection with the Collection of Any Judgment Weighed in Favor of Approving the Settlement**

38.     Even if Lead Plaintiff prevailed at trial and obtained judgment against the Company, it is highly doubtful that Lead Plaintiff would ever be able to collect on that judgment. SinoHub, which is presently defunct and delisted and maintains only minimal wasting policy coverage.   Similarly, any recourse against the Individual Defendants could be futile.   The Company's CEO died in 2013 in China, leaving no attachable estate, while the remaining Defendants are in China and potentially immune from a judgment.   The Settlement Agreement eliminates the risk of collectability by requiring Defendants to pay $600,000 into the Settlement Fund.

## V.   CLASS COUNSEL BELIEVE THE SETTLEMENT CLASS SHOULD BE CERTIFIED

39.     The certification of the Settlement Class for settlement purposes should be confirmed in a final approval order.

40.     The proposed Settlement Class satisfies all of the Rule 23 certification requirements.

41.     The Company's shares were traded on the New York Stock Exchange, an open and efficient market.  The proposed claims administrator has obtained from various brokers and nominees 11,907 separate names and addresses of people who purchased SinoHub common stock during the Class Period.  KCC Aff. ¶¶2, 6.  This number easily exceeds the threshold for establishing numerosity.

42.     Commonality exists.  The Class' claims rest on allegations that Defendants made material misstatements in the public filings and press releases regarding SinoHub and the sales of its products, and that damages to the investors were caused by Defendants' misstatements. These allegations apply identically to virtually every member of the proposed Settlement Class. Thus, there necessarily exists a unifying thread, establishing that commonality between members of the proposed Class exists.

43.     Furthermore, the Class Members' claims arise from the same general course of events, and each Class Member would present identical legal arguments to prove Defendants' liability.  Specifically, Lead Plaintiff alleges that Defendants publicly disseminated untrue and misleading statements regarding the Company's prospects and growth and have thereby injured investors who relied on those statements in connection with the purchase or sale of the Company's common shares.

44.     Lead Plaintiff has already sufficiently demonstrated that the interests of Class Members are vigorously pursued.  Further, there is no evidence that Lead Plaintiff's interests are in conflict with the Settlement Class.  Like the proposed Class Members, Lead Plaintiff purchased or otherwise acquired SinoHub common stock and suffered significant losses as a result of the same conduct.  Thus, the interests of the Lead Plaintiff are not antagonistic, and instead, are perfectly aligned with other Class Members.

45.     The central issues in this Action with respect to the Settlement Class arise out of Lead Plaintiff's grievance concerning Defendants' alleged dissemination of the false and misleading statements, as well as their failure to disclose material adverse facts concerning SinoHub's compliance with the U.S. Generally Accepted Accounting Principles ("GAAP"), its internal controls, and its revenue recognition.  The common, predominant question asks whether Defendants are responsible for the alleged violation and the resulting damage caused to Lead Plaintiff and Class Members alike.  With respect to these alleged claims, all members of the Settlement Class are identically situated.

46.     Superiority requirement is also met.  First, the claims of each individual class member are likely too small to warrant the cost of litigating individually, and it is therefore in the interest of all Class Members to proceed as a class.  Second, Lead Plaintiff is unaware of any existing parallel securities litigation currently pending against the Defendants.  Third, given the large and geographically dispersed Settlement Class, multiple lawsuits would have risked disparate results, threatening to increase the costs of litigation for all parties, and posing an unnecessary burden on the court system.  Thus, concentrating the litigation in one court, in this circuit, is highly desirable.  Finally, Lead Plaintiff does not envision any significant difficulties

likely to be encountered in the management of this Action, rendering this Action appropriate for class treatment.

## VI.   THE NOTICE PROCESS

47.   On July 22, 2015, the Court appointed Kurtzman Carson Consultants LLC ("KCC") to supervise and administer the notice procedure as well as the processing of Class Members' Claims.  ECF 129 at ¶8.

48.   To obtain the names of Class members, KCC utilized its proprietary database of 1,086 brokerage houses, which act as nominees for many security holders, requesting them to forward copies of the Notice to their beneficiaries or to provide the Claims Administrators with a list of their beneficiaries.  KCC Aff. ¶3.

49.   In accordance with the Court's Order, KCC commenced its mailing of the Post-Card Notice, and upon request, the Notice and the Claim Form (together, the "Notice Packet") to members of the Settlement Class on August 11, 2015.  *Id.* ¶2.  Since the initial mailing, KCC has mailed Notice Packets to additional potential Class Members provided to KCC by nominees.  *Id.* ¶¶3, 5.

50.   In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over to *PR Newswire* and a settlement website, www.SinoHubSettlement.com, providing access to downloadable copies of the Stipulation, Notice, Claim Form, and the various Exhibits Referenced in the Stipulation, was established.  *Id.* ¶¶7, 9.  Finally, the Claims Administrator has established a toll-free telephone number where Class Members can obtain additional information related to the Settlement.  *Id.* ¶8.

51.   The Parties' Court-approved Notice Plan described the nature, history, and status of the Action, including the Parties' asserted claims and defenses, set forth the terms and benefits

of the Settlement, explained the rights of the Class Members, including their ability to be excluded as well as the binding effect of the Settlement should they opt to remain in the class.

52.     Additionally, the Class Notice fully disclosed the amount of attorneys' fees and expenses that Lead Plaintiff's Counsel intended to seek in connection with the final settlement approval of the Action and the names and contact information of Class Counsel.   The Notices likewise disclosed the date, time, and place of the Final Approval Hearing, and detailed the procedure for appearing and being heard at the Final Approval Hearing.

53.     To date, there have been no objections and no requests for exclusion from the Settlement.  *Id*. ¶¶10-11.

## VII.    THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE

54.     Plaintiff's damages expert developed a Plan of Distribution, based on the theories of liability, loss causation, and damages at issue in this Action.   The Plan of Distribution was designed to treat all potential claimants in a fair and equitable fashion.

55.     According to the court-approved Plan, each Authorized Claimant will be paid the *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's Recognized Claim as defined in the Plan of Distribution.   The *pro rata* share is based on each Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants.   As such, the Plan is designed to equitably distribute the settlement proceeds to those Class Members who have suffered an economic loss as a proximate result of the alleged wrongful conduct and who have timely submitted valid Proof of Claims.

## VIII.   PLAINTIFF'S COUNSEL BELIEVES THE REQUESTED FEES AND EXPENSES MERIT APPROVAL

56.     For their efforts in achieving this result, Class Counsel seek an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $150,000 plus reimbursement of

$50,000 in expenses. The requested fee represents a fractional lodestar multiplier of 0.15, which also means, that Class Counsel is seeking 15% of the fees they actually billed to this case. Indeed, the requested fee is modest and certainly reasonable when considered under the applicable standards in this Circuit and is well within the normal range of awards made in other contingency-based securities class actions in the Second Circuit.

### A. The Requested Attorneys' Fee Award Is Reasonable Under Either the Percentage Method or the Lodestar Method

57. For Plaintiff's Counsel's extensive efforts on behalf of the Class, they are applying for compensation from the Settlement Fund on a percentage basis. The percentage method is the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. Indeed, the Supreme Court has recognized the percentage method as the appropriate method for cases of this nature, and represents the overwhelming current trend in most circuits, including the Second Circuit.

58. As set forth in the Plaintiff's Fee and Expense Motion, in this district alone, there are scores of common fund cases involving Chinese reverse merger companies where fees alone were awarded in the range between 25%-33% of the settlement fund.

59. Although the Second Circuit disfavors the application of the lodestar method, it nevertheless encouraged district courts to cross-check the percentage fee against counsel's 'lodestar' amount. The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method.

60.     Class Counsel has affirmed that their attorneys' 2012-2015 hourly rates used in this case were and are the regular rates charged by each firm for other contingent cases and are consistent with the rates charged where the firms are located.  *See* Scott Decl.[2]  ¶5.

61.     Here, Class Counsel devoted more than 1,932 hours to performing work for the benefit of the Settlement Class, for an aggregate lodestar of $ 992,931.  *See* Scott Decl., ¶5. Thus, the aggregate attorneys' fee request represents a fractional lodestar multiplier of 0.15 — much less than Class Counsel's lodestar.  This figure is well within the range of reasonableness because lodestar multipliers of 1 to 3 have typically been approved by this district in similar cases.

**B.     Consideration of Relevant Factors Justifies an Award of a 25% Fee in This Case**

**1.     The Magnitude and Complexities of the Action**

62.     As a general matter, securities litigation is '"notoriously difficult and unpredictable.'"  *In re AOL Time Warner Shareholder Derivative Litig.*, 02 CIV. 6302(SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006).  This litigation is no different.  However, in addition to the common complexities of a securities class action, Class Counsel faced the additional challenges that most documentary evidence and witnesses, including the Defendants, were located in China.  Moreover, the claims asserted in this case concerned application and interpretation of the GAAP loss causation and damages, all of which would necessitate the retention of multiple experts.

63.     Had the case moved towards trial, additional motion practice would have prolonged the case and the remaining proceeds from the wasting insurance policy would have

---

[2]     *See* Declaration of Daryl F. Scott ("Scott Decl."), a true and correct copy which is attached as Exhibit B to the Guglielmo Decl.

been depleted.   By the time case proceeded to judgment, Class Counsel would face the uncertainty of collecting any judgment.

### 2.       The Litigation Risk Involved Was Huge

64.       Courts have repeatedly recognized that "the risk of the litigation" is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions.

65.       Here, as fully described in Section II.B.6 of Plaintiff's Final Approval Memorandum and ¶38 above, Class Counsel faced significant risks that they might be unsuccessful in obtaining recovery for the Class and, therefore, they would receive no payment for their efforts.

66.       Despite these uncertainties, Class Counsel were obliged to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action and that sufficient litigation and overhead expenses were advanced to support the case for nearly three years.

### 3.       The Quality of Class Counsel's Representation Supports the Requested Fee

67.       To evaluate the "quality of the representation," courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit.

68.       Here, Class Counsel obtained a reasonable recovery for the Class members of between approximately 5.1% and 7.6% of total compensable damages.  Given the challenges that arose during the litigation and the likelihood of complete non-recovery in the event that the litigation continued, the Settlement obtained constitutes an excellent result for the Class members.

69.       In addition, Class Counsel have many years of experience in complex federal litigation, particularly in the prosecution of securities fraud class actions.  The high quality of

representation provided by Class Counsel is evident from the extensive record of this case, as well as from the firm resume that counsel has submitted to the Court.[3]

70.     The quality of opposing counsel is also important in evaluating the quality of Class Counsels' work.  Here, Defendants were represented by law firms of national repute with vast resources and attorneys who are highly skilled and experienced.  The ability of Class Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.

### 4.     The Size of the Requested Fee Supports Settlement

71.     Class Counsel requests 25% of the Settlement.  This figure is perfectly in line with other similar securities cases involving Chinese reverse merger companies which settled in the Second Circuit and before this Court in the past.

72.     Moreover, the unique realities of this case likewise support the reasonableness of the fee application.  Namely, there is a risk that Plaintiff will be unable to collect on any judgment rendered against Defendants, that the remainder of the wasting insurance policy will be depleted, that Plaintiff will not prevail on its legal theories with respect to loss causation and damages, and that the Court does not certify the Class.

### 5.     The Time and Labor Expended by Class Counsel Support the Requested Fee

73.     The Settlement here was reached after over three years of active litigation and motion practice.

74.     In the course of the litigation, Class Counsel:

    (a)     conducted an extensive pre-filing investigation into the various factual and legal claims against SinoHub and the Individual Defendants that resulted in the filing of the original complaint;

---

[3]     Scott-Scott, Attorneys at Law, LLP's firm résumé, detailing its experience and qualification is attached as Exhibit A to the Scott Decl.

(b)     moved pursuant to the PSLRA and on behalf of Ellsworth Investments for appointment of Lead Plaintiff and Lead Counsel;

(c)     oversaw investigative efforts of private investigators, both in the United States and in China, who obtained information concerning the Company and obtained the Company's regulatory filings in China and who sought to discover Individual Defendants' addresses and governmental identification numbers for purposes of service in China;

(d)     conducted repeated attempts to serve Defendants under the Hague Convention;

(e)     fully briefed oppositions to Defendants' three motions to dismiss;

(f)     engaged in multiple in-person and telephonic meet-and-confers regarding the resolution of this Action;

(g)     consulted with an expert in the field of damages; and

(h)     fully briefed and argued a motion to enforce settlement with Derivative Plaintiff Li.

75.     The process by which this Action was resolved was also lengthy.  Settlement was only reached after Class Counsel attended a full-day negotiating session with the Defendants, and had numerous follow-up communications.  Class Counsel then spent months negotiating the specific terms of the settlement agreement.  The efforts that were required to complete these tasks were extensive and represented an immense risk, given the contingency-based nature of Class Counsel's representation.  To date, Plaintiff's Counsel has spent 1,932.2 hours litigating this case.

**6.     Public Policy Considerations Fully Support the Fee Requested**

76.     Public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation.

77.     Moreover, where many, if not most, Class Members are individual investors, public policy supports an award sufficient to encourage counsel to act on behalf of such

investors.  Lead Plaintiff, who was actively involved in the Settlement process, fully supports the Settlement and the Attorneys' Fees.

## IX.   THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

78.    It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class.

79.    As detailed in the Scott Decl., Class Counsel incurred a total of $54,712 in litigation expenses on behalf of the Settlement Class in the prosecution of this Action.  *See* Scott Decl., ¶6.  These expenses were necessarily incurred during litigation and are of the type routinely charged to clients and billed by the hour.  *Id.*  These expenses include, among others: (i) the cost of consultants; (ii) factual research; (iii) court fees; (iv) travel expenses and court reporting services; (v) cost of photocopying; (vi) facsimile charges; and (vii) postage and delivery expenses.  *Id.*

80.    The largest component of Class Counsel's expenses, nearly one half of the entire bill, was incurred in connection with locating and serving Defendants in China.  In this regard, Plaintiff's Counsel incurred costs for: (i) a private investigator, who sought to locate and identify the proper parties; (ii) mandatory translation of documents into the Chinese language under the Hague Convention; and (iii) repeated attempts to effectuate service on the Individual Defendants in China.  Undeniably, these costs were necessarily incurred for purposes of perfecting valid service under the Federal Rules of Civil Procedure.

81.    A significant component of Plaintiff's Counsel's expenses was the cost of Plaintiff's expert, who was retained to calculate the total estimated damages and to prepare the Plan of Distribution that provided for adequate recoveries to all Class Members.  The Plan of Distribution became an integral part of the Settlement and ultimately, the Notice disseminated to

the Class Members.  *See In re Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (observing that "massive expenditure for expert fees is wholly unsurprising [in light of] the many core issues that turn upon expert opinions.").

## X.  LEAD PLAINTIFF IS ENTITLED TO COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78u-4(a)(4)

82.    The PSLRA, 15 U.S.C. §78u-4(a)(4), permits the Lead Plaintiff, in this case Ellworth Investments, to recoup litigation costs (including lost wages) incurred as a result of serving as Lead Plaintiff in the Action and ensuring that the Class was adequately represented. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel."

83.    Here, Ellsworth Investments respectfully requests reimbursement of costs and expenses in the amount of $5,000.  *See* Ellsworth Decl., ¶10.  As set forth in its Declaration, Ellsworth Investments stepped forward to represent the Class and devoted many hours participating in this litigation, including, *inter alia*: (i) regularly communicating with counsel by email and telephone regarding the posture and progress of the case; (ii) reviewing and discussing with counsel Lead Plaintiff's complaint, amended complaint, briefing before this Court, and the Court's orders; (iii) instituting a "litigation hold" to ensure that documents related to this litigation would not be lost or destroyed; (iv) providing information, including documents, to counsel; (v) discussing settlement strategy with counsel; (vi) communicating with counsel regarding the settlement process and procedure; and (vii) reviewing the Court's Order preliminarily approving the settlement and discussing issues relevant to the final approval process, including counsel's request for attorneys' fees and expenses.  *See* Ellsworth Decl., ¶7.

84.    For the reasons set forth in this Declaration as well as in the Lead Plaintiff's Memorandum in Support of Motion for Attorneys' Fees, Expense Reimbursement, and Service

Award, Class Counsel respectfully request that the Court approve their request for an award of

25% of the Settlement Fund, or $150,000, in attorneys' fees and expenses.

85.     Attached hereto are true and correct copies of the following documents:

| Exhibit A | Affidavit of Justin R. Hughes Regarding (A) Mailing of the Post Card Notice; (B) Publication of the Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; and €Report on Requests for Exclusion and Objections; |
|---|---|
| Exhibit B | Declaration of Daryl F. Scott in Support of Scott+Scott, Attorneys at Law, LLP's Application for Award of Attorneys' Fees and Reimbursement of Expenses |
| Exhibit C | Declaration of Lead Plaintiff Ellsworth Investments Limited in Support of Final Approval of Settlement and Application for Service Award |

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on this 23rd day of October in New York, New York.

DATED:  October 23, 2015                    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

                                            /s/ Joseph P. Guglielmo
                                            JOSEPH P. GUGLIELMO (JG-2447)
                                            The Chrysler Building
                                            405 Lexington Avenue, 40th Floor
                                            New York, NY 10174-4099
                                            Tel.: (212) 223-6444
                                            Fax: (212) 223-6334
                                            Email: jguglielmo@scott-scott.com

                                            *Counsel for Lead Plaintiff Ellsworth Investments Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 23, 2015.

/s/ Joseph P. Guglielmo
JOSEPH P. GUGLIELMO (JG-2447)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174-4099
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email: jguglielmo@scott-scott.com